Stewart, J.
 

 Two questions are presented in this case. The first is, was Acme, within the meaning of'
 
 *427
 
 the statute, a “successor in interest” to Buckeye, and the second is, did Acme make its claims for refund of •alleged excess contributions within the time limited by law.
 

 Under Section 1345-4 (c) (1), General Code, it is provided in part:
 

 “If an employer shall transfer his business or shall -otherwise reorganize such business, the successor in interest is hereby required to assume the resources and liabilities of such employer’s account, and to continue the payment of all contributions * *
 

 It is conceded in this case that, if Acme was a “successor in interest” to Buckeye, its rate of contribution to the bureau should have been the same as Buckeye’s, to wit, seven-tenths per cent. The administrator contends that Acme was not a “successor in interest,” and ’the deputy administrator and the Court of Common Pleas so held. The Court of Appeals held that Acme ■was a “successor in interest,” and, in this court, the •administrator has assigned such holding as errdr. It is contended on the one hand by the administrator that Buckeye had ceased business before Acme was incorporated or functioning in business. The administrator contends that to be a “successor in interest” the successor must have had transferred to it and must have taken over a going business; that Buckeye had ceased to manufacture aluminum products in September 1941, -owing to the shortage of aluminum, and on October 22, 1941, its stockholders authorized a complete liquidation and distribution of its property; and that it marketed the last of its products about January 1942, so that, at the time Acme purchased Buckeye’s property ••and assets, it was doing no business except the mere matter of liquidating. The administrator contends further that late in 1942 Acme started up in the old Buckeye property an entirely new type of business, to wit,
 
 *428
 
 the manufacture of war materials. On the other hand, it is contended by Acme that since it purchased the plants,, assets, goodwill and right to use the name, Buckeye,. Acme was the “successor in interest” of Buckeye. Acme contends further that neither Buckeye nor itself could manufacture aluminum ware because the-government conscripted all aluminum, and that, since-Buckeye would still have been the same company if it had turned to the manufacture of war materials, Acme-was in fact and in law a “successor in interest.”
 

 In the view we take of this case, we are not called upon to decide the question whether Acme was a “successor in interest” to Buckeye. Acme’s claims for refund of its excess contributions were under authority of Section 1345-2 (e) which reads as follows:
 

 “If not later than four years after the date on which any contribution or interest thereon is paid, an employer who has paid such contribution or interest shall make application for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof because such adjustment cannot be-made, and the administrator shall determine that such' contribution or interest or any portion thereof was erroneously collected, the administrator shall allow such employer to make an adjustment thereof, without interest, in connection with subsequent contribution payments by him, or if such adjustment cannot be made-the administrator shall refund said amount, without' interest, from the clearing account of the unemployment fund * *
 

 It is conceded that Acme’s applications for refund' were made within four years after the rights predicating such applications accrued, and that, if the above-statute were the only one involved and if it were determined that Acme was a “successor in interest” to» Buckeye, Acme would be entitled to have its excess-
 
 *429
 
 payments refunded to it, it being impossible to make any adjustment thereof in connection with subsequent contributions because of the fact that Acme ceased business late in 1944. However, to bar Acme’s claims for refunds, the administrator is. relying upon another section of the Unemployment Compensation Act.
 

 Section 1345-4, General Code, provides,
 
 inter alia:
 

 “The administrator shall determine as of each computation date the contribution rate of each employer for the next succeeding contribution period. Once a rate of contribution has been established under the provisions of this section for a contribution period * * *, such rate shall remain effective throughout such contribution period. The rate of contribution shall be determined in accordance with the following requirements :
 

 “As soon as practicable after October 1st but not later than January 31st of the ensuing calendar year the administrator shall notify each employer of his contribution rate as determined for the next ensuing contribution period pursuant to this section. * * *
 

 “Such rate shall become binding upon the employer unless, within 60 days after the mailing of notice thereof to his last known address, or in the absence of mailing of such notice, within 60 days after the delivery of such notice the employer files an application for review and redetermination, setting forth his reasons therefor. The administrator shall promptly examine the application for review and redetermination, and if a review is granted, the employer shall be promptly notified thereof and shall be granted an opportunity for fair hearing. ’ ’
 

 The section proceeds with a provision that if the administrator denies the application of the employer he may appeal to the Common Pleas Court of Frank- ■
 
 *430
 
 lin county, and that an appeal may be taken from the judgment of the Common Pleas Court.
 

 In this case, although Acme was notified in J anuary 1943 that its rate for thé time it did business in 1942 was two and seven-tenths per cent, and was again notified in January 1943 that its rate for 1943 was two and seven-tenths per cent, and was notified in J anuary 1944 that its rate for 1944 was two and seven-tenths per cent, it paid its contributions for all three periods strictly according to the rates fixed by the bureau and did not file an application for review and redetermination within 60 days of receiving notice of such rates. Since the statute provides that the rate shall be binding upon the employer if an application for a review and redetermination is not filed within 60 days of the reception of notice of the rate by the employer, it is contended by the administrator that the rate became final, and that the application of Acme under Section 1345-2 (e), General■ Code, was of no avail.
 

 We are confronted with two statutes, one general and the other specific. Section 1345-2 (e) gives a four-year limitation for an application for an adjustment or refund of any contribution or any portion thereof which was erroneously collected. This would include any overpayments because the amount had been incorrectly figured according to the rate established, any overpayments because of a mistake in figuring the number of employees for whom payments had to be made, or any overpayments from any general cause. Acme contends that it was within time in its applications, for the reason that although it paid strictly according to the rate fixed for it, nevertheless the greater portion of its contributions were erroneously collected because it should rightly have had a much lower rate. • Yet the rate becomes binding unless the application for
 
 *431
 
 review and redetermination is made within 60 days after the mailing or receipt of the notice thereof.
 

 It is a general rule of law in statutory construction that when there are two statutory provisions covering the same subject matter, one of which is general and the other special, the special statutory provision for a specific case is to be construed as an exception to general provisions which might otherwise include the particular case.
 

 This court has followed that general rule which is not only buttressed by authority but is sound in reason and logic. In
 
 State, ex rel. Steller,
 
 v.
 
 Zangerle, Aud.,
 
 100 Ohio St., 414, 126 N. E., 413, it is said:
 

 “A special statute covering a particular subject matter must be read as an exception to a statute covering the same and other subjects in general terms.”
 

 In
 
 State, ex rel. Elliott Co.,
 
 v.
 
 Connar, Supt.,
 
 123 Ohio St., 310, 175 N. E., 200, the first paragraph of the syllabus reads:
 

 “Special statutory provisions for particular cases operate as exceptions to general provisions which might otherwise include the particular cases and such cases are governed by the special provisions.”
 

 Therefore, a statutory provision, which would make a rate of contribution binding upon an employer unless within 60 days after the employer receives notice of the rate he files an application for review and re-determination, would govern over a statutory provision fixing the time limitation at four years for an application for a refund of a contribution or a portion thereof which was erroneously collected. The 60-day provision applying specifically to the rate must be considered as an exception to the four-year provision which applies generally to erroneously collected contributions.
 

 Acme contends, however, that the word, “binding,”
 
 *432
 
 in the clause of Section 1345-4, General Code, which reads, “such rate shall become binding upon the employer unless, within 60 days, ’ ’ does not mean final or conclusive. It is earnestly cohtended and ingeniously argued on behalf of Acme that the 60-day provision means that the employer who had paid in accordance with it must continue to so pay during the period for which the rate was set unless he makes application within 60 days for a review and redetermination, but that that is as far as he is bound, and he may within the four-year provision apply for the excess paid by him as a result of an incorrect rate for the correction <of which he had not applied within the 60 days.
 

 We are of the opinion that this construction of the word, “binding,” is too strained, and that the real meaning of the word in the legislative mind denotes finality and conclusiveness. It seems too plain to be defined otherwise.
 

 In
 
 Meunier’s case,
 
 319 Mass., 421, at page 423, 66 N. E. (2d), 198, it is said:
 

 “The controversy in the present case hinges on the meaning to be given to the word ‘binding.’ That word has frequently been employed in our decisions to denote that certain evidence is final and conclusive against a party * * *.
 

 “The word ‘bind’ or ‘binding’ appearing in our statutes has been construed to mean conclusive.”
 

 Holding as we do that, since Acme did not avail itself of its right to file applications to have its rate reviewed and redetermined under Section 1345-4 (c) (4) (F) within 60 days after it received notice of the rates it could not avail itself of Section 1345-2 (e), it would make no difference whether it was a successor in interest’to Buckeye.
 

 It might be said that it is an unfortunate hardship that one who erroneously paid large sums in excess
 
 *433
 
 of what its contribution should have been cannot have refunds made to it, but that same thing can be said in connection with any claim or appeal which has been barred because not brought within the time provided by law. It may seem hard that a title by adverse possession can ripen against an owner or that a demonstrably erroneous judgment cannot be reversed because an appeal was not filed within the statutory period, but it is the policy of the law to bring controversial matters to a time of repose and if one has not availed himself of his legal remedies within the time fixed by law he must bear his misfortune. The fact the general statutory provision provides a four-year limitation and the special provision one of only 60 days may seem to a defeated party to be unwise, but, as we have so frequently said, the wisdom or desirability of legislation is a question for the legislative and not the judicial branch of government. Our function is limited to an interpretation of the meaning of statutory provisions and whether they are in accord with the federal and state Constitutions.
 

 The judgment óf the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Sohngen, JJ., concur.
 

 Turner, J., not participating.