Stewart, J.
The sole question before us is whether the Tax Commissioner had the power to make an additional franchise tax assessment based on United States government securities which the taxpayer disclosed and reported in its 1952 and 1953 franchise tax returns, which securities the commissioner, on his own motion, excluded from the original assessments.
The solution of the foregoing question depends upon the construction of two statutes, namely, Sections 5703.05 and 5733.15, Revised Code.
Section 5703.05, which is a part of Chapter 5703, Department of Taxation, provides in part as follows:
“All other powers, duties, and functions of the Department of Taxation, except those mentioned in Sections 5703.02 and 5703.04 of the Revised Code, are vested in and shall be performed by the Tax Commissioner, which powers, duties, and functions shall include, but shall not be limited to the following:
i ( # * *
“(I) Making all tax assessments, valuations, findings, determinations, computations, and orders which the Department of Taxation is by law authorized and required to make, except the tax assessments, valuations, findings, determinations, computations, and orders which the Board of Tax Appeals is by law authorized and required to make, and, pursuant to time limitations provided by law, on his own motion, reviewing, redetermining, or correcting any tax assessments, valuations, findings, determinations, computations, or orders which he has made except that he shall not review, redetermine, or correct any tax assessment, valuation, finding, determination, computation, or order which he has made as to which an appeal or application for rehearing, review, redetermination, or corree *194 tion has been filed with the Board of Tax Appeals, unless such appeal or application is withdrawn or dismissed by the appellant or applicant.”
The commissioner contends that, under the broad powers granted by the foregoing statute, he was authorized in the present case to mate the reassessment of the franchise taxes of the company for the years 1952 and 1953. However, it is to be noted that in the language of the statute the assessments which the commissioner is authorized to make are limited to those which the Department of Taxation is by law authorized and required to make, and that his power to redetermine or correct any tax assessment must be “pursuant to time limitations provided by law.”
There is no time limitation provided in the statute, and, under the commissioner’s contention, he could redetermine a tax assessment at any time in the unlimited future unless he were bound by Section 5733.05, Revised Code, which is in Chapter 5733, Corporation Taxes — Excise; Franchise. That section provides in part as follows:
“After the filing of the annual corporation report, the Tax Commissioner, if he finds such report to be correct, shall on or before the first Monday in May determine the value of the issued and outstanding shares of stock of every corporation required to file such report.”
If that is the time limitation referred to in Section 5703.05, then obviously the commissioner was too late in making his reassessment for the reason that he did determine the values of the issued and outstanding shares of stock of the company in 1952 and 1953 but did not make his redetermination until November 28, 1955.
However, the company contends that the commissioner was not by law authorized and required to make the reassessment in question because of the provisions of Section 5733.15, which, likewise, is in Chapter 5733. That section reads in part as follows:
“If any corporation fails to make any report to the Tax Commissioner required by law, or makes such report and fails to report or reports erroneously any information essential to the determination of any amount, value, proportion, or other *195 fact to be determined by tbe commissioner pursuant to law, which is necessary for the fixing of any fee, tax, or assessment, the commissioner shall determine such amount, value, proportion, or other fact and shall certify the same as required by law. Such power and duty of the commissioner shall extend only to the five years next preceding the year in which such inquiry is made. Upon the determination and certification by the commissioner, a tax, fee, or assessment shall be charged for collection from such corporation * * V’
The company contends that this latter section is a special statute referring only to excise or franchise tax cases, and, therefore, must take precedence over the general taxation statute, Section 5703.05, if there is a conflict between the two sections.
As we have said, if the time limitation mentioned in Section 5703.05 as to franchise tax assessments is fixed by Section 5733.05, the commissioner was not authorized to determine a reassessment on the company’s returns for 1952 and 1953. If that is not the case, then it seems that by inevitable logic Section 5733.15 is the section which governs the power of the commissioner to redetermine an assessment of franchise taxes. That section gives the commissioner no power to redetermine the franchise tax of a corporation which has made a full and honest disclosure in its report to the commissioner, from which report the commissioner determines the tax, but it does provide that the commissioner may redetermine the tax if a corporation fails to make a report or reports erroneously any information essential to the determination of the tax, and under such section such power of the commissioner extends only to the five years next preceding the year in which such inquiry is made.
It is conceded that the company made a full and honest disclosure, and, if the contention of the commissioner is sound, we would have the grotesque result that, as to an honest taxpayer who has made a full disclosure, there is an unlimited time in which to reassess him, whereas a dishonest or fraudulent taxpayer is protected from any reassessment unless the error or fraud is discovered and a reassessment is made within five years of his erroneous or false return.
We can not contemplate that the General Assembly intended any such result,
*196 We have held so many times that it has become axiomatic that a special statutory provision which applies to a specific subject matter constitutes an exception to a general statutory provision covering other subject matter as well as the specific subject matter. State, ex rel. Steller et al., Trustees, v. Zangerle, Aud., 100 Ohio St., 414, 126 N. E., 413; State, ex rel. Elliott Co., v. Connar, Supt., 123 Ohio St., 310, 175 N. E., 200; Acme Engineering Co. v. Jones, Admr., 150 Ohio St., 423, 83 N. E. (2d), 202; Johnson v. United Enterprises, Inc., ante, 149.
It is obvious that Section 5733.15 is a special statute referring to corporation taxes, excise and franchise, whereas Section 5703.05 is a general taxation provision.
The Board of Tax Appeals and the commissioner place great reliance upon the case of Daiquiri Club, Inc., v. Peck, Tax Commr., 159 Ohio St., 52, 110 N. E. (2d), 705, but we are of the opinion that a careful study of that case will reveal that it is in no way similar to the present case.
In the Daiquiri case we held that the provision of Section 5546-9a, General Code, that a sales tax assessment against a vendor ‘ ‘ shall become and be deemed conclusive ’ ’ unless within 30 days after service of notice of such assessment such vendor files a petition setting forth the items thereof objected to and the reasons for such objection, is a limitation of time within which an aggrieved vendor may protest such assessment, but that the time within which the Tax Commissioner may redetermine or correct sales tax assessments is four years, as prescribed by Section 5546-9J, General Code.
The Daiquiri case was concerned with a grossly false return, and in its facts and in the statutes covering the situation created by them there was no similarity to the question presented to us in the present case.
The commissioner contends that it would be unfair to allow the company to escape the assessment which he has made, and that other unfair situations might arise by reason thereof, but surely no situation could be more unfair than to interpret a law so that a dishonest taxpayer would be preferred over one who has made a completely honest return.
It seems to us that to cure any unfairness which may result from the interpretation of any statute, the General Assembly is the body to which an appeal must be made.
*197 It follows from what we have said that the decision of the Board of Tax Appeals must be, and it hereby is, reversed, and final judgment is rendered for the company.

Decision reversed.

Weygandt, C. J., Taut and Herbebt, JJ., concur.
Zimmekman, Bell and Matthias, JJ., dissent.