[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 246.]

THE STATE OF OHIO, APPELLANT, *v.* CONYERS, APPELLEE.

THE STATE OF OHIO, APPELLANT, *v.* SCHULTZ, APPELLEE.

[Cite as *State v. Conyers*, 1999-Ohio-60.]

*Statutory construction—General and special provisions—Criminal law—Parolee leaves halfway house without permission—Escape—Applicability of R.C. 2921.34(A)(1) to parolee—During period of October 4, 1996 to March 17, 1998, the parolee-exclusion language contained in the special provision of former R.C. 2967.15(C)(2) prevailed as an exception to the general provision of R.C. 2921.34(A)(1).*

(Nos. 98-1779 and 98-1929—Submitted September 14, 1999—Decided December 1, 1999.)

APPEAL from the Court of Appeals for Lucas County, No. L-97-1327.

APPEAL from the Court of Appeals for Hamilton County, No. C-970954.

_____

I.      Case No. 98-1779: Appellee David Conyers.

{¶ 1} In April 1996, defendant-appellee David Conyers was released from prison and paroled to a halfway house operated by the Volunteers of America ("VOA") in Toledo, Ohio. The doors to the halfway house are locked and monitored by VOA staff, and residents of the halfway house are required to have a signed pass from their case manager before they are permitted to leave. Residents and visitors must pass through a metal detector and be signed in or out.

{¶ 2} In October 1996, while remaining on parole, appellee Conyers was allowed to move out of the halfway house to live with his godmother. As the result of a parole violation in January 1997, Conyers was required to return to the VOA halfway house as a resident.

{¶ 3} On April 19, 1997, Conyers was issued a pass to attend an Alcoholics Anonymous meeting outside the halfway house. Conyers left the halfway house at 6:00 p.m. and was required to return at 10:00 p.m. After returning at 10:45 p.m., Conyers was asked to take a breathalyzer test in accordance with VOA policy for residents who return late. Conyers refused to take the test, left the halfway house without permission, and did not return.

{¶ 4} Conyers was indicted, convicted, and sentenced under the Ohio escape statute, which punishes any person under detention who "purposely break[s] or attempt[s] to break the detention, or purposely fail[s] to return to detention * * * following temporary leave granted for a specific purpose or limited period." R.C. 2921.34(A)(1). The term "detention," as defined in R.C. 2921.01(E), includes parolees as individuals considered to be in "detention."

{¶ 5} On appeal, Conyers argued that he could not be convicted under the escape statute because a parole statute, former R.C. 2967.15(C)(2), specifically excluded parolees from the class of individuals who could be prosecuted for escape. The Sixth District Court of Appeals found a conflict between R.C. 2921.01(E), 2921.34(A)(1), and former 2967.15(C)(2), and reversed Conyers's conviction. The court of appeals reasoned that former R.C. 2967.15(C)(2) was a special provision that prevailed as an exception to R.C. 2921.34(A)(1) and 2921.01(E).

II.    Case No. 98-1929: Appellee Charles E. Schultz.

{¶ 6} In December 1996, defendant-appellee Charles E. Schultz was paroled from prison after serving a sentence for passing bad checks. As a condition of his parole, Schultz was required to enter the Talbert House Cornerstone Program. On February 8, 1997, Schultz left the Talbert House without permission and did not return.

{¶ 7} Schultz was indicted for the crime of escape under R.C. 2921.34(A)(1). Schultz pled no contest to the charge and was found guilty by the trial court. Later, Schultz filed a motion to withdraw his earlier plea and a motion

to dismiss, arguing that a parolee could not be prosecuted under the Ohio escape statute given the conflict between that statute and former R.C. 2967.15(C)(2). The trial court denied both motions.

**{¶ 8}** Appellee Schultz appealed to the First District Court of Appeals, arguing that the conflict between R.C. 2921.34(A)(1) and former 2967.15(C)(2) warranted dismissal of his indictment. The court of appeals agreed and reversed appellee Schultz's conviction.

**{¶ 9}** The consolidated cases are now before this court pursuant to the allowance of discretionary appeals.

_____

*Julia R. Bates*, Lucas County Prosecuting Attorney, and *Eric A. Baum*, Assistant Prosecuting Attorney, for appellant in case No. 98-1779.

*Jeffrey M. Gamso*, for appellee David Conyers in case No. 98-1779.

*Michael K. Allen*, Hamilton County Prosecuting Attorney, and *Phillip R. Cummings*, Assistant Prosecuting Attorney, for appellant in case No. 98-1929.

*Ravert J. Clark*, for appellee Charles E. Schultz in case No. 98-1929.

_____

**MOYER, C.J.**

**{¶ 10}** The sole issue before this court is whether the appellees could, as a matter of law, be convicted under R.C. 2921.34(A)(1) for leaving a halfway house without permission. More specifically, we are asked to determine whether, during the time between October 4, 1996 and March 17, 1998, a parolee could be convicted pursuant to R.C. 2921.34(A)(1) for leaving a halfway house without permission in view of the conflict as it then existed between R.C. 2921.01(E) and former 2967.15(C)(2). For the following reasons, we answer this question in the negative and affirm the decisions of the courts of appeals.

**{¶ 11}** Before October 4, 1996, R.C. 2921.01(E) defined "detention" as "supervision by an employee of the department of rehabilitation and correction of

a person on any type of release from a state correctional institution *other than release on parole * * * .*" (Emphasis *sic*.) 146 Ohio Laws, Part IV, 7335. Thus, parolees were not then considered in "detention" for purposes of the escape statute. The emphasized phrase was removed on October 4, 1996, so that when the appellees committed the acts in question, parolees were included in the class of persons subject to prosecution for escape. 146 Ohio Laws, Part II, 2214. A conflict then arose because the language of former R.C. 2967.15(C)(2), which, at the relevant times, provided that "[a] furloughee or releasee other than a person who is released on parole * * * is considered to be in custody * * * and * * * may be prosecuted for the offense of escape." 146 Ohio Laws Part IV, 7584. This temporary conflict was resolved as of March 17, 1998, when R.C. 2967.15(C)(2) was amended to remove the exception for parolees. See Am.Sub.S.B. No. 111. Our task is to determine the effect of the conflict as it existed between October 1996 and March 1998, during which time the appellees were convicted of escape for leaving their halfway houses without permission while still on parole.

{¶ 12} It is a well-settled principle of statutory construction that when an irreconcilable conflict exists between two statutes that address the same subject matter, one general and the other special, the special provision prevails as an exception to the general statute. R.C. 1.51; see, also, *State ex rel. Dublin Securities, Inc. v. Ohio Div. of Securities* (1994), 68 Ohio St.3d 426, 429-430, 627 N.E.2d 993, 996-997; *Abraham v. Natl. City Bank Corp.* (1990), 50 Ohio St.3d 175, 178, 553 N.E.2d 619, 621-622; *Acme Eng. Co. v. Jones* (1948), 150 Ohio St. 423, 38 O.O. 294, 83 N.E.2d 202, paragraph one of the syllabus.

{¶ 13} R.C. 1.51 states that "[i]f a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." The

first inquiry, then, is whether the conflict between R.C. 2921.01(E) and former 2967.15(C)(2) is irreconcilable.

{¶ 14} The state argues that the provisions at issue did not conflict because neither expressly prohibited an activity that the other allowed and, therefore, we do not need to resort to R.C. 1.51. In support of this argument, the appellant cites our decision in *Sutherland-Wagner v. Brook Park Civ. Serv. Comm.* (1987), 32 Ohio St.3d 323, 512 N.E.2d 1170. *Sutherland-Wagner*, however, is distinguishable from the present action.

{¶ 15} In *Sutherland-Wagner*, this court was asked to determine whether the inability to appeal a civil service employment suspension under R.C. 124.34 to the court of common pleas precluded an appeal to that court under the general administrative appeal provision in R.C. 2506.01. We concluded that resort to R.C. 1.51 was unnecessary because no conflict existed. *Id.* at 325, 512 N.E.2d at 1172. R.C. 124.34 merely denied appeals to the court of common pleas under that particular section. *Id.* The statute did not, however, limit appeals brought under other sections of the Revised Code. *Id.* Further, an express prohibition in one provision of an act that another provision allows is not necessary for a conflict to exist. It suffices that two provisions provide for inconsistent and irreconcilable results on a particular issue. When we examine R.C. 2921.01(E) and former 2967.15(C)(2), an irreconcilable conflict is evident.

{¶ 16} R.C. 2921.34(A)(1) provides that no person under detention "shall purposely break or attempt to break the detention, or purposely fail to return to detention." The term "detention" is defined broadly to include, *inter alia*, arrest, confinement in a facility for custody of persons charged with or convicted of a crime, and supervision of a person *on any type of release from a state correctional facility*. R.C. 2921.01(E). Thus, R.C. 2921.01(E) considers parolees in "detention" for purposes of prosecution pursuant to R.C. 2921.34(A)(1).

{¶ 17} Former R.C. 2967.15(C)(2), as it existed at the relevant times, however, provided that a "furloughee or a releasee *other than a person who is released on parole*" may be prosecuted for escape. (Emphasis added.) Former R.C. 2967.15(C)(2) did not expressly prohibit an activity authorized by the escape statute. The provisions at issue merely provide differing definitions of who is considered in "detention" or "custody" for purposes of prosecution under R.C. 2921.34(A)(1). Under former R.C. 2967.15(C)(2), parolees are excepted from the escape statute, whereas under R.C. 2921.01(E), parolees are included within the class of individuals subject to the escape statute. Reading these two provisions together results in an irreconcilable conflict.

{¶ 18} After an irreconcilable conflict is determined to exist, the next inquiry is whether the provisions at issue are general or specific. See *State v. Chippendale* (1990), 52 Ohio St.3d 118, 120, 556 N.E.2d 1134, 1136. If one of the conflicting statutes is a general provision and the other is a special provision, then R.C. 1.51 applies and the special provision prevails. An examination of R.C. 2921.01(E) and former 2967.15(C)(2) reveals that there is a general/special distinction between the two statutes.

{¶ 19} When engaging in statutory interpretation, courts will give the words in a statute their plain and ordinary meaning absent a contrary legislative intent. *Coventry Towers, Inc. v. Strongsville* (1985), 18 Ohio St.3d 120, 122, 18 OBR 151, 152, 480 N.E.2d 412, 414; see, also, *Lake Cty. Natl. Bank of Painesville v. Kosydar* (1973), 36 Ohio St.2d 189, 191, 65 O.O.2d 404, 406, 305 N.E.2d 799, 801. The common meaning of "general" is that which is "universal, not particularized, as opposed to special." Black's Law Dictionary (6 Ed.1990) 682. R.C. 2921.34(A)(1) creates the offense of escape, and defines the crime broadly. In this sense, the escape statute is a general provision that provides punishment for knowingly breaking or attempting to break detention, and does not, by its own language, limit

its application. R.C. 2921.01(E) is also a general provision that defines the term "detention" as it is used throughout R.C. Chapter 2921.

{¶ 20} In contrast, former R.C. 2967.15(C)(2) expressly limited the scope of R.C. 2921.34(A)(1) by excluding parolees from the class of individuals who could be prosecuted for escape. Thus, former R.C. 2967.15(C)(2) created an exception to the escape statute and is properly considered a special provision.

{¶ 21} The state argues that R.C. 1.51 will not apply where, as here, the conflicting statutes address the same conduct (*i.e.*, whether a parolee can be charged with escape). The appellant asserts that because former R.C. 2967.15(C)(2) contradicted the escape statute, it cannot be considered an exception and, therefore, was not a special provision. We do not agree.

{¶ 22} In viewing former R.C. 2967.15(C)(2) as a contradiction rather than an exception, the state overlooks the nature of this provision. Former R.C. 2967.15(C)(2) was not designed to nullify the escape statute. Rather, it further defined who was and was not subject to prosecution under the escape statute. The General Assembly intended former R.C. 2967.15(C)(2) to limit application of R.C. 2921.34(A)(1). It did not intend to enact a statute that would render another code provision inoperative under all circumstances.

{¶ 23} Having determined that R.C. 2921.34(A)(1) and 2921.01(E) are general provisions, and that former R.C. 2967.15(C)(2) was a special provision, the conflict is to be resolved using R.C. 1.51. Under R.C. 1.51, the special provision will prevail as an exception to the general provision, where there is an irreconcilable conflict, unless the general provision is the later adoption and there is a manifest intent that the general provision prevail. Accordingly, unless the General Assembly manifested its intent that R.C. 2921.01(E) prevail over former R.C. 2967.15(C)(2), the language in former R.C. 2967.15(C)(2) will prevail as an exception to the escape statute.

**{¶ 24}** The October 4, 1996 amendment to R.C. 2921.01(E), removing the parolee-exception language from the definition of "detention," did not include an express desire for the amendment to prevail over all other code provisions. We must presume that the General Assembly is aware of previously enacted legislation. See *Henrich v. Hoffman* (1947), 148 Ohio St. 23, 27, 34 O.O. 473, 474-475, 72 N.E.2d 458, 460. If the General Assembly had wanted to remove the parolee exception in former R.C. 2967.15(C)(2) at the time it amended former R.C. 2921.01(E), it could have done so. The language of amended R.C. 2921.01(E) reveals no intent to remove the parolee exception from former R.C. 2967.15(C)(2).

**{¶ 25}** The state argues that the March 17, 1998 amendment to R.C. 2967.15(C)(2), removing the parolee exception, indicates the manifest intent of the General Assembly with regard to the 1996 amendment to R.C. 2921.01(E). Essentially, the state urges us to read the General Assembly's current intent and apply it retroactively to reach the desired conclusion. In general, a "statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48; see, also, *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 398, 596 N.E.2d 432, 434; *Warren Cty. Bd. of Commrs. v. Lebanon* (1989), 43 Ohio St.3d 188, 189, 540 N.E.2d 242, 244. While it may now appear that the General Assembly intended to remove all parolee exceptions in 1996 and corrected its omission by amending R.C. 2967.15(C)(2) in 1998, hindsight—without an express statement of either retroactivity or intent—is not enough to override the application of former R.C. 2967.15(C)(2).

**{¶ 26}** Based on all of the foregoing, we conclude that during the period of October 4, 1996 to March 17, 1998, the parolee-exclusion language contained in the special provision of former R.C. 2967.15(C)(2) prevailed as an exception to the general provision of R.C. 2921.34(A)(1). Accordingly, the judgments of the courts of appeals are affirmed.

*Judgments affirmed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____