Williams, J.
 

 The relator maintains that the Conservancy Act of Ohio, effective February 17, 1914, Sections 6828-1 to 6828-79 inclusive, General Code, requires “appraisal of benefits from time to time as it becomes evident to the board of directors that the condition of any real property in the district has changed to an extent that the owners of such property are profiting by or making use of the works of the district
 
 *54
 
 to a degree not compensated for by the original appraisal of benefits” and that changes of that character in the condition of many assessed properties have occurred and are manifest to the board of directors.
 

 The question, therefore, is whether there is a right to such an appraisal of benefits or enhanced benefits, or in other words a reappraisal of property which has received such benefits or enhanced benefits — by adding the amount of appraisal of benefits or enhanced benefits to the original appraisal — -with the consequent reassessment of property.
 

 The cause was submitted upon the pleadings and an agreed statement of facts. A brief summary however will suffice to make the factual situation plain.
 

 The Miami Conservancy District, which is a public corporation organized under the Conservancy Act of Ohio, extends along the valley of the Great Miami River and includes the city of Dayton and many other municipalities. This conservancy district was established on or about June 28,1915, by decree of the Court of Common .Pleas of Montgomery county, Ohio, composed of judges as provided in the act and known as a “Conservancy Court,” for the purpose of preventing floods in the valleys of such river and its tributaries. The Conservancy Court thereafter approved an official plan for. flood control, which had been duly adopted by the board of directors of the district, and appointed a board of appraisers which thereupon appraised approximately 70,000 separate pieces of real property for benefits and damages. The amount of benefits appraised aiid assessed against such pieces of real estate aggregated $38,021,259.59 and the benefits appraised and assessed against public corporations aggregated $40,247,970. These appraisals were ap
 
 *55
 
 proved and confirmed by the court on or about July 30, 1917.
 

 Thereupon the board of directors of the district levied an assessment of 36% against real estate and public corporations for the total of the appraised benefits. This levy proving insufficient to pay the cost of the execution of the plan, an additional levy of 14% was made on or about September 28, 1920. Many owners of real estate so assessed promptly paid their assessments in full. Conservancy bonds, of which the last installment matures December 1, 1949, were issued in anticipation of the collection of installments of unpaid assessments, and early in the year 1923 monies derived from assessments paid in full and from the sale of the bonds were sufficient to discharge in full the cost of the execution of the official plan. Accordingly payment thereof was made forthwith.
 

 The action of the Conservancy Court in ordering and approving the original appraisals was taken under and by virtue of Section 6828-33, General Code, which contains the following provision: “If it appears to-the satisfaction of the court after having heard and determined all said exceptions that the estimated cost of constructing the improvement contemplated in the •official plan is less than the benefits appraised,v then the court shall approve and confirm said appraisers’ report as so modified and amended, and such findings and appraisals shall be final and incontestable.” The ■exceptions referred to are those filed by the property owner pursuant to Section 6828-32, General Code. Section 6828-34, General Code, in substance provides that any person or public or private corporation may have a hearing and if requested a jury trial following an award of compensation or damages, and such hearing or trial is denominated an appeal. Section 6828-38,
 
 *56
 
 General Code, provides that a failure to appeal shalL exclude all remedies except as provided in the act. By these statutory provisions full opportunity for hearing, is accorded the property owner.
 

 Although all such “findings and appraisals” are-“final and incontestable” by the terms of che statute-section 6828-33, General Code), the relator seeks to-justify his course by virtue of Section 40 of the act. (Section 6828-40, General Code).
 

 Preliminary to an analysis of that section it should be stated that the relator in his brief also makes some-reference to Sections 37 and-39 (Sections 6828-37 and 6828-39, General Code). It is our judgment, however,, that Sections 37 and 39 have no bearing whatever upon, the question presented here. Section 37 applies only when some change is made in the official plan which,, according to the agreed statement of facts herein, remained unaltered. Section 39 relates only to lands-that are “not liable for taxation and assessment at the time of the execution of the work,” but afterwardsbecome liable therefor. None of the lands with which, we are concerned comes within that category.
 

 Section 6828-40, General Code, reads thus:
 

 “In case any real property or public corporation within or without any district is benefited which for any reason was not appraised in the original proceedings, or was not appraised to the extent of benefits-received, or in case any person or public corporation-, shall make use of or profit by the works of any district, organized under this chapter to a degree not compensated for in the original appraisal, or in case the directors of the district find it necessary, subsequent to-the time when the first appraisals are made, to take or damage any additional property, the directors of said!
 
 *57
 
 district, at any time such condition becomes evident, shall direct the board of appraisers to appraise the benefits or the enhanced benefits received by such property or public corporation, or such damages or value of property taken, and proceedings outlined in this chapter for appraising lands not at first included within the boundaries of the district shall in all matters be conformed with, including notice to the party or parties. • Or the board may, at its discretion, make any suitable settlement with such person or public corporation for such use, benefit, damage or property taken. ’ ’
 

 It appears that, in addition to adherence to the official plan without alteration, no changes have beén made in the original appraisals of benefits or damages except such as are set forth in the agreed statement of facts as follows: “In a few cases where, because of clerical errors or obvious omissions, benefited real property was not appraised in the original proceedings or was not appraised to the extent of benefits received, the board of appraisers, pursuant to direction of the board of directors, appraised all benefits to the full extent of benefits received as provided in Section 40 of said Conservancy Act [Section 6828-40, General Code].” But now, as heretofore indicated, the relator insists that the board of directors should go further than it ever has gone before and make a sweeping appraisal of benefits or enhanced benefits by virtue of the provisions of the same section.
 

 The relator maintains that because there is an increase in values of various pieces of real estate by reason of the erection or remodeling of residences, garages, hotels, apartments, office buildings, manufacturing plants, and other structures, above their former
 
 *58
 
 appraisal, and properties of municipalities and other-political subdivisions have changed in value, and new buildings have been erected, he, as owner of one of' the assessed parcels of real estate upon which he pays-an annual assessment, is entitled to have so-called enhanced benefits valued by the board of appraisers,, which course would amount to a reappraisement and result in an increase in the assessments on such properties. He does not claim that property which has deteriorated in value or has not enhanced in value since-the original appraisement should be included in the-new appraisal. Under this contention, for instance, a. lot on which a valuable building had been destroyed, by fire would not be relieved of any part of the original assessment, but a vacant-lot on which a building-had been erected would bear the burden of being appraised and assessed for enhanced value.
 

 Many queries are suggested by the relator’s endeavor to have an increased appraisal of some of the properties previously assessed. Is a property on which the-assessment was paid in full and not in installments to-be further liable for benefits or enhanced benefits? Should the owner of such property who had paid in-full and then received in return the full benefit of the improvement be required to pay again merely because-he has since erected valuable buildings on the assessed realty? If he does pay again, will he receive-more than that for which he has already paid in meeting the original assessment? Or should further appraisal and assessment apply only to a property owner who is paying his assessments in installments? If' a right exists to have further appraisal as to such property only, does the right expire with payment of
 
 *59
 
 the last installment? How can a further appraisal, which applies to some properties previously assessed and not to others, be in keeping with the constitutional guaranties of equal protection? An attempt to answer these queries reveals, the complications and injustices which would arise were the construction which the relator seeks placed on the statutes.
 

 This court cannot accede to the relator’s contention. The whole act must be read together and when so read it is not apparent that the intent of the General Assembly was to allow reappraisals from time to time of properties which had increased in value since the original assessment.
 

 We are aware that the relator insists that he does not seek a reappraisal of any property but merely an appraisal of subsequent benefits or enhanced benefits. According to his claim, the value of the enhanced benefits would be the difference between the value of the improvements at the time of the original appraisal and the value of the improvements erected subsequent to that appraisal, and such difference, added to the original appraisal, would give the total of the appraised value which would be the basis of a reassessment*. In our judgment that course .would result in a reappraisal.
 

 When a flood control improvement is lawfully established and the lands within the conservancy district are duly appraised, the rights of parties whose properties must bear the assessment become fixed with respect to appraised value as of the time of the decree of the Conservancy Court- approving appraisals, and the adjudication of the court is
 
 res judicata
 
 as to all owners of property appraised. The rights of property owners, having become fixed when the appraisals were
 
 *60
 
 approved, cannot thereafter be altered by a reappraisal such as relator seeks. Section 40 is indefinite and whatever its proper application may be need not be determined here and now. It suffices to say that, when construed in relation to the other provisions, its language has not the breadth of meaning necessary to sanction reappraisement of property to include additional benefits or enhanced benefits. Generally speaking, we may safely say the evident purpose and intent of that section is to supply omissions and protect rights which have arisen wholly since the improvement and have not previously been determined in a judicial proceeding. This construction comports with constitutional requirements and does not deny to property owners the equal protection of the laws.
 

 The Court of Appeals did not err in reaching the conclusion that relator was not entitled to a writ of mandamus and the judgment of that court will be and hereby is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Turner, JJ., concur.
 

 Bell, J., not participating.