**The STATE of Ohio, Appellee,**

v.

**ROBINSON, Appellant.**

[Cite as *State v. Robinson*, 160 Ohio App.3d 802, 2005-Ohio-2280.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 2004–CA–45.

Decided May 5, 2005.

804

David L. Landefeld, Prosecuting Attorney, and Kate L. Tournous, Assistant Prosecuting Attorney, for appellee.

Thomas R. Elwing, for appellant.

---

Gwin, Judge.

{¶ 1} Appellant, Amanda R. Robinson, appeals her conviction in the Fairfield County Municipal Court on one count of driving under the influence ("OMVI") in violation of R.C. 4511.19(A)(1) and one count of driving left of center in violation of R.C. 4511.25. The appellee is the state of Ohio. The following facts give rise to this appeal.

{¶ 2} On November 27, 2003, at approximately 1:48 a.m., Trooper Donald Ward of the Ohio State Highway Patrol stopped an automobile driven by the appellant for a marked-lanes violation. After the vehicle was stopped, Trooper Ward claims that appellant had some "blood shot eyes," and he noticed "odor of alcohol from the vehicle." Appellant admitted to having consumed two beers that evening.

{¶ 3} Trooper Ward removed appellant from her vehicle and administered standardized field sobriety tests ("FSTs"). A horizontal gaze nystagmus ("HGN") test was administered twice while appellant was seated in Trooper Ward's police cruiser. Trooper Ward observed six clues on each test. Trooper Ward also administered a walk-and-turn test, during which he observed four clues. Before appellant performed the walk-and-turn test, she removed her shoes. The test was conducted on the roadway with appellant wearing only socks on her feet. After the test was complete, the videotape showed appellant brushing something from the bottom of her socks. Trooper Ward commented on the fact that she was brushing gravel from her socks.

{¶ 4} Trooper Ward also administered the one-leg stand test, during which he observed a single clue. Trooper Ward conceded that he did not give appellant a proper instruction for executing a turn when performing the walk-and-turn test. Trooper Ward failed to instruct appellant to keep her front foot on the line while executing the turn. Even though Trooper Ward failed to give the correct instruction, he found a clue of impairment when appellant turned incorrectly.

{¶ 5} After appellant completed the field sobriety test, she was placed under arrest for DUI and a marked-lanes violation. Appellant was then transported to the State Highway Patrol Post, where she refused to take a breath-alcohol test.

{¶ 6} On March 3, 2004, the trial court overruled appellant's motion to suppress. On March 16, 2004, the trial court overruled a motion for an expert witnesses at the state's expense and a motion for a transcript of the suppression hearing at the state's expense.

{¶ 7} Following the trial court's ruling on appellant's motions, the case was set for trial. The case was tried to a jury, which found appellant guilty as charged. Appellant timely appealed, raising the following five assignments of error for our consideration:

{¶ 8} "I. The trial court erred when it overruled appellant's motion to suppress field sobriety tests not administered in strict compliance with standardized testing procedures.

{¶ 9} "II. The trial court erred when it imposed an increased sentence after unsuccessful plea discussions in which the trial judge participated.

{¶ 10} "III. The trial court erred when it overruled appellant's motion for an expert witness at state's expense.

{¶ 11} "IV. The trial court erred when it overruled appellant's motion for a transcript at state's expense.

{¶ 12} "V. The trial court erred when it allowed the arresting officer to use a learned treatise as substantive evidence regarding the accuracy of his decision to arrest appellant for DUI."

I

{¶ 13} In her first assignment of error, appellant maintains that the Senate Bill No. 163 amendment to R.C. 4511.19, effective April 9, 2003, is unconstitutional. The new section, R.C. 4511.19(D)(4)(b), provides that field sobriety test results conducted in "substantial," as opposed to "strict," compliance with testing standards are generally admissible as evidence. Appellant asserts that the statute is null and void as an unconstitutional infringement on a more stringent standard previously set by decision of the Ohio Supreme Court. When the more stringent standard is applied, appellant submits, evidence of the field sobriety tests should have been suppressed, resulting in a lack of probable cause for a DUI arrest.

{¶ 14} The issue is whether the mandate of strict compliance laid down by the Supreme Court in *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, renders the legislative provision demanding only substantial compliance unconstitutional under Section 5(B), Article IV, of the Ohio Constitution and Evid.R. 702.

{¶ 15} Prior to the Supreme Court's decision in *Homan,* Ohio statutory law did not contain an express provision regarding the admissibility of field sobriety test results. After the *Homan* decision, however, the Ohio General Assembly deliberated on the issue of field sobriety tests, and enacted Amended Substitute Senate Bill No. 163 (S.B. 163) in 2002. S.B. 163 amended R.C. 4511.19 to provide:

{¶ 16} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

{¶ 17} "(i) The officer may testify concerning the results of the field sobriety test so administered.

{¶ 18} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.

{¶ 19} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible

under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."

{¶ 20} The legislature therefore determined that testimony or other evidence of field-sobriety tests done in substantial compliance with The National Highway Traffic and Safety Administration ["NHTSA"] standards should be admitted as evidence if otherwise admissible under the Rules of Evidence and accorded "whatever weight the trier of fact considers to be appropriate." *State v. Phipps*, 3d Dist. No. 2–03–39, 2004-Ohio-4400, 2004 WL 1873748, at ¶ 7.

{¶ 21} The relevant part of Section 5, Article IV, of the Constitution of Ohio reads as follows: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the Court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

{¶ 22} In *Phipps*, the court found the amendment to R.C. 4511.19 not to conflict with the rulemaking power of the Ohio Supreme Court. See, also, *State v. Miracle*, 12th Dist No. CA2003–11–275, CA2003–11–283, 2004-Ohio-7137, 2004 WL 3015753; *State v. Faul*, 2d Dist. No. 20579, 2004-Ohio-6225, 2004 WL 2659123; *State v. Nutter*, 128 Ohio Misc.2d 24, 811 N.E.2d 185, 2004-Ohio-3143.

{¶ 23} The question concerning whether "substantial" or "strict" compliance controls centers exclusively upon the admissibility of the *results* of the so-called FSTs. The Ohio Supreme Court has made clear that the officer may testify at trial regarding *observations* made during a defendant's performance of standardized field sobriety tests even absent proof of "strict compliance." *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, at ¶ 15. Accordingly, no conflict exists on that issue between the amendments of R.C. 4511.19 because it does not conflict with any existing formal rule of evidence. In other words, the officer's *observations* made during a defendant's performance of the FSTs are admissible under *Schmitt* even if only substantial compliance with standardized testing procedures is shown.

{¶ 24} We hasten to add, however, that the HGN test would not be included within the *observations* of the officer because, unlike the other psychomotor tests such as the walk-and-turn and one-leg stand, the HGN involves observations a

layperson would not make in assessing an individual's sobriety and is not within a juror's common understanding. *See Schmitt,* supra.

{¶ 25} Because unlike the other psychomotor tests such as the walk-and-turn and one-leg stand, the HGN involves observations a layperson would not make in assessing an individual's sobriety and is not within a juror's common understanding, we believe that the amendment to R.C. 4511.19 would be unconstitutional with respect to the admission of the HGN test.

{¶ 26} "[W]e are duty bound, if possible, to reconcile and harmonize, so far as practicable, these statutory provisions so as to make them consistent, harmonious and sensible. See 82 Corpus Juris Secundum, 691 and 705, Statutes, Sections 345 and 346; *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45 [59 O.O. 65, 133 N.E.2d 780]; *Blackwell, Gdn. v. Bowman, Ex'r* (1948), 150 Ohio St. 34 [37 O.O. 323, 80 N.E.2d 493]; *Acme Engineering Co. v. Jones, Adm'r* (1948), 150 Ohio St. 423 [38 O.O. 294, 83 N.E.2d 202]; *State ex rel. Gross v. Board of Directors of Miami Conservancy District* (1943), 141 Ohio St. 52 [25 O.O. 149, 46 N.E.2d 407]. In our opinion, effect can be given to both sections and yet preserve the purpose of the General Assembly." *State ex rel. Burton v. Smith* (1963), 174 Ohio St. 429, 432, 23 O.O.2d 78, 189 N.E.2d 876.

{¶ 27} Pursuant to R.C. 4511.19(D)(4)(iii), any evidence concerning the FSTs is to be excluded if the testimony or evidence is not admissible under the Rules of Evidence.

{¶ 28} Both the National Highway Traffic and Safety Administration manual and the Ohio Supreme court recognize that any deviation from the testing protocol renders the HGN test results unreliable. As stated by the court in *Homan,* "When field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable. In an extensive study, the National Highway Traffic Safety Administration ('NHTSA') evaluated field sobriety tests in terms of their utility in determining whether a subject's blood-alcohol concentration is below or above the legal limit. The NHTSA concluded that field sobriety tests are an effective means of detecting legal intoxication 'only when: the tests are administered in the prescribed, standardized manner [,] * * * the standardized clues are used to assess the suspect's performance [, and] * * * the standardized criteria are employed to interpret that performance.' National Highway Traffic Safety Adm., U.S. Dept. of Transp., HS 178 R2/00, DWI Detection and Standardized Field Sobriety Testing, Student Manual (2000), at VIII–3. According to the NHTSA, '[i]f any one of the standardized field sobriety test elements is changed, the validity is compromised.' *Id.* Experts in the areas of drunk driving apprehension, prosecution, and defense all appear to agree that the reliability of field sobriety test results does indeed turn upon the degree to which police comply with standard-

ized testing procedures. See, *e.g.*, 1 Erwin, Defense of Drunk Driving Cases (3 Ed.1997), Section 10.06[4]; Cohen & Green, Apprehending and Prosecuting the Drunk Driver: A Manual for Police and Prosecution (1997), Section 4.01." *Homan,* 89 Ohio St.3d at 424–25, 732 N.E.2d 952.

{¶ 29} A trial judge or jury is not suited, absent expert testimony, to determine whether a given deviation from the testing protocol found in the NHTSA manual renders the results of the HGN test unreliable. The possibility arises that the state may try to have the trooper qualified as an expert to testify that his method did not skew the results even though he did not follow the procedure. This possibility creates a problem because the officer does not have a background in statistical analysis, nor the methodology utilized by NHTSA in determining the reliability of the HGN, nor the effect of any deviation from standard protocol.

{¶ 30} The problem will only truly prejudice a defendant when the state relies exclusively on the HGN test at trial or where there were problems in the administration of the other FSTs, or the other FSTs otherwise yield inconclusive results.

{¶ 31} Scientific evidence is not admissible under Evid.R. 702 unless the proponent of the evidence lays a proper foundation by presenting adequate expert testimony concerning the reliability of the specific procedures used and the underlying scientific principles or theories. See *State v. Pierce* (1992), 64 Ohio St.3d 490, 494–97, 597 N.E.2d 107. By the decisions by the Ohio Supreme Court in *State v. Bresson* (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330, *Homan,* 89 Ohio St.3d 421, 2000-Ohio-212, 732 N.E.2d 952, and *Schmitt,* the general reliability of the HGN, one-leg-stand, and walk-and-turn tests have been established. "Accordingly, results of this test are admissible so long as the proper foundation has been shown both as to the officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *Bresson,* 51 Ohio St.3d at 128, 554 N.E.2d 1330. Expert testimony to establish the underlying scientific principles or theories is not required. The question at issue in the case at bar does not center on the reliability of the underlying scientific principles or theories but, rather, upon the level of compliance with the standardized testing criteria that is necessary to produce accurate results.

{¶ 32} The standard for the admissibility for scientific evidence in Ohio as found in *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444, is whether the questioned evidence is relevant and will assist the trier of fact in understanding evidence presented or in determining a fact in issue. *State v. Pierce* (1992), 64 Ohio St.3d 490, 497, 597 N.E.2d 107.

{¶ 33} In *State v. Adams,* the Ohio Supreme Court made the following comment: "Although Evid.R. 702 was amended after *Pierce* to state the reliability requirement, the Staff Note to Evid.R. 702 indicates that '[t]he amendment is intended to clarify the circumstances in which expert testimony is admissible. * * * [N]o substantive change from prior law is intended. In particular, there is no intention to change existing Ohio law regarding the reliability of expert testimony.

{¶ 34} "Further, we have recognized since Evid.R. 702 was amended that '[r]elevant evidence based on valid principles will satisfy the threshold reliability standard for the admission of expert testimony. The credibility to be afforded these principles and the expert's conclusions remain[s] a matter for the trier of fact. The reliability requirement in Evid. R. 702 is a threshold determination that should focus on a particular type of scientific evidence, not the truth or falsity of an alleged scientific fact or truth.' *State v. Nemeth* (1998), 82 Ohio St.3d 202, 211, 694 N.E.2d 1332.

{¶ 35} "In *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735, we also emphasized that the reliability inquiry relates to the validity of the underlying scientific principles, not the correctness of the expert's conclusions ..." Id. at 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, at ¶ 83–85.

{¶ 36} To be admissible, the evidence under Evid. R. 702(C)(3) must show that "[t]he particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 37} The decisions in *Schmitt* and *Homan* make clear that absent strict compliance in the realm of any FST, a test such as the HGN, which is not a psychomotor test within the observations a layperson would make in assessing an individual's sobriety and is not within a juror's common understanding, will not satisfy the threshold reliability standard for the admission of expert testimony pursuant to Evid.R. 702. Accordingly, the issue of relevancy or admissibility of scientific evidence cannot be usurped by the legislature. The constitutional principle of separation of powers among the branches of government demands this conclusion. It is the function of the judiciary to rule on the admissibility of relevant scientific evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (the Federal Rules of Evidence provide the standard for admitting expert scientific testimony in a federal trial).

{¶ 38} It is unlikely that the average juror has any conception or understanding of what "nystagmus" means. It is a scientific term probably not familiar to most persons. The relationship of nystagmus to the consumption of alcohol or drugs is a scientific principle. The manifestation of nystagmus under different

circumstances is also a scientific theory that would not be known by the average person. HGN testing is based on a scientific principle not generally known by lay jurors. *State v. DeLong,* 5th Dist. No. 02CA35, 2002-Ohio-5289, 2002 WL 31185809 at ¶ 59–60.

{¶ 39} The Ohio Supreme Court has determined that if the test is done in strict compliance with the protocol for the administration of the test, then the state does not have to bring in an expert to testify concerning the underlying principles and scientific validity of the test. However, if strict compliance is not shown in a particular case, then the state does not get the benefit of this "presumption" of reliability. A jury may be inappropriately influenced by the apparent scientific precision of HGN testing or otherwise fail to properly understand it. *State v. DeLong,* supra. Accordingly, the Ohio Supreme has determined that in order to achieve admission under Evid.R. 702, the test must meet the strict compliance standard set forth in *Homan* and *Bresson.*

{¶ 40} Appellant in this case did not submit to any chemical test. What is being sought here by the state is admission of HGN testing as an element of proof to permit the factfinder to conclude that failure of the HGN test, in combination with the failure of coordination tests, sufficiently proves a defendant's guilt of driving under the influence of alcohol. This use is qualitatively different from use of the HGN test only to establish probable cause to arrest or only in conjunction with breathalyzer results.

{¶ 41} Absent strict compliance with the testing protocol, the HGN test would not be admissible under the Rules of Evidence. Accordingly, R.C. 4511.19(D) would mandate the exclusion by the trial court.

{¶ 42} However, a defendant's performance of nonscientific standardized field sobriety tests would be admissible even absent proof of "strict compliance" pursuant to R.C. 4511.19(D). The most recent pronouncement from the Ohio Supreme Court characterizes the walk-and-turn, one-leg stand, and other psycho-motor coordination tests as "nonscientific field sobriety tests." *Schmitt,* 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, at ¶ 12. Accordingly, admissibility of these tests is not dependant upon fulfillment of Evid. R. 702's requirements for scientific evidence.

{¶ 43} The finder of fact is less likely to be inappropriately influenced by a psychomotor test within the observations a layperson would make in assessing an individual's sobriety. This type of test is within a juror's common understanding. *State v. DeLong,* supra.

{¶ 44} We conclude, then, that for all practical purposes, under existing statutes, R.C. 4511.19(D) is viable only so far as it complements Evid.R. 702 and

the Ohio Supreme Court's decisions interpreting the admission of scientific, nonpsychomotor field sobriety tests.

{¶ 45} The amended statute does not attempt to define "substantial compliance." Thus, it will remain the province of the courts to determine whether the standard was met on a case-by-case basis. Additionally, the court must still find that the proffered evidence meets the standard for admissibility contained in Evid.R. 401 and Evid.R. 403 prior to the evidence being deemed admissible at trial. The amended statute does not preclude an attack at trial on the specific testing procedure utilized by an officer.

{¶ 46} As a result, the state in this case was required only to show that Trooper Ward performed the nonscientific, psychomotor field sobriety tests in substantial compliance with the applicable standards described in R.C. 4511.19(D)(4)(b). *State v. Nicholson*, Warren App. No. CA2003–10–106, 2004-Ohio-6666, 2004 WL 2849229. Appellant has not argued that the tests performed here did not meet this substantial-compliance standard. In the case at bar, the HGN was not conducted in strict compliance with the testing protocol. Accordingly, based upon the above analysis, the results of the HGN test were not admissible at trial, and Trooper Ward may not testify regarding appellant's performance on the HGN test.

{¶ 47} The totality of the evidence, even excluding the HGN and the psychomotor coordination tests, gave rise to probable cause to arrest for DUI. *Homan*, 89 Ohio St.3d at 427, 732 N.E.2d 952.

{¶ 48} In the case sub judice, prior to stopping appellant's vehicle, Trooper Ward observed appellant fail to keep her vehicle within marked lanes of travel. Also, upon approaching appellant's vehicle, Trooper Ward observed that appellant's eyes were bloodshot and that a strong odor of alcohol emanated from her. Finally, appellant admitted to consuming two beers. Thus, even without the results of the field sobriety tests, Trooper Ward had probable cause to arrest appellant for DUI. The trial court reached the same conclusion.

{¶ 49} We therefore find that it was not error for the trial court to determine there was probable cause to support appellant's arrest for DUI.

{¶ 50} Although the HGN test should not have been admitted at appellant's trial, we find in this case that the admission of the HGN test at appellant's trial was harmless beyond a reasonable doubt.

{¶ 51} Pursuant to Crim.R. 52(A), any error will be deemed harmless if it did not affect an accused's substantial rights. Thus, under a Crim.R. 52(A) analysis, the conviction will be reversed unless the state can demonstrate that defendant has suffered no prejudice as a result of the error. *State v. Perry*, 101

Ohio St.3d 118, 121, 2004-Ohio-297, 802 N.E.2d 643 (citing *United States v. Olano* [1993], 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 and *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061). "When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the minds of the average juror." *State v. Young* (1983), 5 Ohio St.3d 221, 226, 5 OBR 484, 450 N.E.2d 1143 (citing *Harrington v. California* (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284). An appellate court must reverse if the government does not meet its burden. *Perry,* at ¶ 15.

{¶ 52} As previously stated, Trooper Ward observed appellant fail to keep her vehicle within marked lanes of travel. Also, upon approaching appellant's vehicle, Trooper Ward observed that appellant's eyes were bloodshot and that a strong odor of alcohol emanated from her. Finally, appellant admitted to consuming two beers. The jury also reviewed the videotape of the traffic stop and appellant's performance on the psychomotor-coordination tests. We conclude that the appellant suffered no prejudice as a result of the error.

{¶ 53} Appellant's first assignment of error is overruled.

## II

{¶ 54} In her second assignment of error, appellant contends that the trial judge imposed a harsher sentence than was recommended pursuant to negations concerning a possible change of plea solely upon the basis that appellant elected to have her case tried to a jury. We disagree.

{¶ 55} Misdemeanor sentencing is governed by R.C. 2929.22, which states as follows:

{¶ 56} "(A) In determining whether to impose imprisonment or a fine, or both, for a misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine for a misdemeanor, the court shall consider the risk that the offender will commit another offense and the need for protecting the public from the risk; the nature and circumstances of the offense; the history, character, and condition of the offender and his need for correctional or rehabilitative treatment; any statement made by the victim, if the offense is a misdemeanor specified in division (A) of section 2930.01 of the Revised Code; and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him.

{¶ 57} "(B) The following do not control the court's discretion, but shall be considered in favor of imposing imprisonment for a misdemeanor:

{¶ 58} "(1) The offender is a repeat or dangerous offender;

{¶ 59} "(2) Regardless of whether or not the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older, permanently and totally disabled, or less than eighteen years of age at the time of the commission of the offense.

{¶ 60} "(C) The criteria listed in section 2929.12 of the Revised Code, favoring shorter terms of imprisonment for felony, do not control the court's discretion, but shall be considered against imposing imprisonment for a misdemeanor.

{¶ 61} "(D) The criteria listed in divisions (B) and (C) of this section shall not be construed to limit the matters which may be considered in determining whether to impose imprisonment for a misdemeanor.

{¶ 62} "(E) The court shall not impose a fine in addition to imprisonment for a misdemeanor, unless a fine is specially adapted to deterrence of the offense or the correction of the offender, the offense has proximately resulted in physical harm to the person or property of another, or the offense was committed for hire or for purpose of gain.

{¶ 63} "(F) The court shall not impose a fine or fines which, in the aggregate and to the extent not suspended by the court, exceeds the amount which the offender is or will be able to pay by the method and within the time allowed without undue hardship to himself or his dependents, or will prevent him from making restitution or reparation to the victim of his offense."

{¶ 64} Sentencing and imposing fines are within the sound discretion of the trial court. *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220. In order to find an abuse of that discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 65} Appellant was convicted after a jury trial of a second OMVI conviction within six years. R.C. 4511.19 provides for mandatory sentencing as follows:

{¶ 66} "(b) Except as otherwise provided in division (G)(1)(e) of this section, an offender who, within six years of the offense, previously has been convicted of or pleaded guilty to one violation of division (A) or (B) of this section or one other equivalent offense is guilty of a misdemeanor of the first degree. The court shall sentence the offender to all of the following:

{¶ 67} "(i) If the sentence is being imposed for a violation of division (A)(1)(a), (b), (c), (d), or (e) of this section, a mandatory jail term of ten consecutive days. The court shall impose the ten-day mandatory jail term under this division unless, subject to division (G)(3) of this section, it instead imposes a sentence under that division consisting of both a jail term and a term of house arrest with electronic

monitoring, with continuous alcohol monitoring, or with both electronic monitoring and continuous alcohol monitoring. The court may impose a jail term in addition to the ten-day mandatory jail term. The cumulative jail term imposed for the offense shall not exceed six months.

{¶ 68} "In addition to the jail term or the term of house arrest with electronic monitoring or continuous alcohol monitoring or both types of monitoring and jail term, the court may require the offender to attend a drivers' intervention program that is certified pursuant to section 3793.10 of the Revised Code. If the operator of the program determines that the offender is alcohol dependent, the program shall notify the court, and, subject to division (I) of this section, the court shall order the offender to obtain treatment through an alcohol and drug addiction program authorized by section 3793.02 of the Revised Code."

{¶ 69} Accordingly, the trial court was prohibited by statute from imposing first-time-offender penalties upon appellant after trial. We therefore cannot find the trial court abused its discretion by not sua sponte granting the appellant a first-time-offender status.

{¶ 70} In the case at bar, the court went to great lengths to explain to the appellant that the "deal" was for first-time offender penalties, even though this offense was appellant's second. The court informed appellant that the minimum for a second OMVI offense was a mandatory ten days. The court further informed the appellant that the court "has complete latitude as to what the penalty will be, regardless of what plea agreements have been done before or have been offered." Appellant does not contend that she failed to understand the plea agreement or the consequences of going to trial. Thus, the only deviation in the case at bar about which the appellant can complain is the one from the minimum ten-day sentence to a 15–day sentence and from the minimum fine of $350 to a fine of $425.

{¶ 71} In deviating from the minimum sentence, the trial court noted that appellant was 24 years old and that this is her second OMVI conviction. See, e.g., R.C. 2929.12(D)(2). The appellant had not learned form her past mistake. See, e.g., R.C. 2929.12(D)(3). The appellant was unwilling to admit or acknowledge that she had an alcohol problem. See, e.g., R.C. 2929.12(D)(3).

{¶ 72} In the case at bar, there is no indication that the trial judge negotiated the terms of any plea agreement; rather, the trial judge was cautious to inform appellant concerning the risks of going to trial. The record indicates that the trial judge made no attempt to coerce or pressure appellant into accepting or rejecting any offer. We find no impropriety with the trial court's actions.

{¶ 73} Appellant's second assignment of error is overruled.

III

{¶ 74} In her third assignment of error, appellant maintains that the trial court erred in failing to appoint an expert witness on standardized FSTs to assist her in the preparation of her defense. We disagree.

{¶ 75} At the outset, we note that the trial court's judgment entry grants appellant's request for an expert but does not specify an amount for compensation of the expert. Nonetheless, we will address appellant's assignment of error.

{¶ 76} The appointment of an expert rests within the trial court's sound discretion. *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 749 N.E.2d 226. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore*, 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. We note that harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

{¶ 77} The factors that the trial court must considered when faced with an indigent's request for funds to obtain an expert are (1) the value of the expert assistance to the defendant's proper representation at either the guilt or sentencing phase of an aggravated murder trial and (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought. *State v. Broom* (1988), 40 Ohio St.3d 277, 283, 533 N.E.2d 682; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 193, 15 OBR 311, 473 N.E.2d 264.

{¶ 78} In *Caldwell v. Mississippi* (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231, the Supreme Court found no denial of due process when the state court refused to fund the hiring of various experts in a capital case. The court noted that the "petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial * * *." Id., 472 U.S. at 323–324, 105 S.Ct. 2633, 86 L.Ed.2d 231, fn. 1. *"Ake [v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53] and *Caldwell* taken together hold that a defendant must show more than a mere possibility of assistance from an expert. Rather, the defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial." *Little v. Armontrout* (C.A.8, 1987), 835 F.2d 1240, 1244.

{¶ 79} Where a party seeks to put on expert testimony about the reliability of an officer's administration of the FSTs, as in the case sub judice, there are a number of alternative devices through which a defendant can accomplish the same ends, including rigorous cross-examination, pointing out inconsistencies or discrepancies in the testing method, and alerting jurors to factors that may affect the reliability of the test results as noted in the National

Highway Traffic and Safety manual. See *State v. Buell* (1986), 22 Ohio St.3d 124, 133, 22 OBR 203, 489 N.E.2d 795. In light of these alternatives, we cannot say that the trial court abused its discretion in denying appellant's motion in the instant case.

{¶ 80} In the case at bar, the jury was able to see the administration of the test results via the trooper's videotape cruiser camera. The jury was also alerted to the standards contained in the NHTSA manual. The manual itself was admitted into evidence. The appellant failed to show a reasonable probability that an expert would aid in her defense and that denial of expert assistance would result in an unfair trial. Further, appellant did not made the particularized showing that is necessary to be entitled to a state-funded expert witness.

{¶ 81} In light of the alternatives available to appellant at trial, we cannot say that the trial court abused its discretion in denying appellant's motion in the instant case.

{¶ 82} Appellant's third assignment of error is overruled.

## IV

{¶ 83} In her fourth assignment of error, appellant maintains that the trial court erred by not supplying her with a transcript of the videotaped suppression hearing at state expense. We disagree.

{¶ 84} In *State ex rel. Seigler v. Rone* (1975), 42 Ohio St.2d 361, 71 O.O.2d 328, 328 N.E.2d 811, the court stated: "Equal protection dictates that the state must provide indigent criminal defendants '. . . with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal.' *Britt v. North Carolina* (1971), 404 U.S. 226, 227 [92 S.Ct. 431, 30 L.Ed.2d 400]. See, also, *Mayer v. Chicago* (1971), 404 U.S. 189 [92 S.Ct. 410, 30 L.Ed.2d 372]; *Draper v. Washington* (1963), 372 U.S. 487 [83 S.Ct. 774, 9 L.Ed.2d 899]; *Griffin v. Illinois* (1956), 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891]."

{¶ 85} *Britt v. North Carolina*, 404 U.S. at 227, 92 S.Ct. 431, 30 L.Ed.2d 400, identifies the two factors that must be considered in determining whether an indigent criminal defendant needs a transcript for an effective defense or appeal: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript."

{¶ 86} In the case at bar, appellant has failed to demonstrate the value of the transcript of Trooper Ward's suppression-hearing testimony. Appellant has that transcript now for purposes of appeal, yet does not direct this court to any inconsistencies between the trial testimony and the suppression-hearing testimony. Further, the trial court did make the videotape of the suppression hearing

available to appellant and her counsel for copying or review purposes. Appellant fails to offer any argument concerning why this alternative was not acceptable.

{¶ 87} Accordingly, the appellant's fourth assignment of error is overruled.

## V

{¶ 88} In her fifth assignment of error, appellant maintains that the trial court erred in permitting Trooper Ward to testify concerning the underlying studies upon which the reliability of the FSTs as indicators that a driver is impaired are based. We disagree.

{¶ 89} Appellant did not object at trial to the admission into evidence of the NHTSA manual. Nor does appellant raise as an assignment of error on appeal the trial court's admission of the manual into evidence.

{¶ 90} In *State v. Brown* (1992), 65 Ohio St.3d 483, 605 N.E.2d 46, the court set forth the following standard: "In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's 'substantial rights.' Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to 'declare a belief that it was harmless beyond a reasonable doubt.' *Chapman* [*v. State of Cal.* (1967)], supra, 386 U.S. [18] at 24, 87 S.Ct. [824] at 828, 17 L.Ed.2d [705] at 711. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154." Id. at 485, 605 N.E.2d 46.

{¶ 91} The NHTSA manual that was admitted into evidence contains the identical information that Trooper Ward testified to at trial. The jury had the manual and was free to study the information that forms the basis of appellant's objection on appeal. Accordingly, any error in the admission of Trooper Ward's testimony on this issue was harmless beyond a reasonable doubt.

{¶ 92} Appellant's fifth assignment of error is overruled.

{¶ 93} For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

WISE, J., concurs.

HOFFMAN, J., concurs in part and dissents in part.

HOFFMAN, Judge, concurring in part and dissenting in part.

{¶ 94} I concur in the majority's analysis and disposition of appellant's assignments of error I, II, III, and IV.

{¶ 95} I respectfully dissent from the majority's disposition of appellant's fifth assignment of error. Although appellant did not object to the admission into evidence of the NHTSA manual, which contained the challenged testimony, appellant timely objected when the challenged testimony was elicited on direct examination from the arresting officer. Unlike the majority, I find that the statistical nature of this testimony went to the ultimate fact to be determined by the jury and created a reasonable probability that it contributed to appellant's conviction; therefore, it was not harmless beyond a reasonable doubt.

{¶ 96} I would sustain appellant's fifth assignment of error, reverse the conviction, and remand the matter for a new trial.