OPINION
{¶ 1} This is an appeal from a decision of the Mount Vernon Municipal Court denying Appellant's Motion to Suppress and sua sponte suppressing certain other evidence.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} The case involved a charge of operating a vehicle under the influence of alcohol under Section 333.01(A)(1) of the Mount Vernon ordinances which is the same, content wise, as R.C. 4511.19(A)(1).
 {¶ 3} Appellant filed a Motion to Suppress moving the court to suppress "the introduction of the evidence including any testimony of evidence regarding Defendant's `refusal' to submit to testing regarding alcohol content of Defendant's blood, breath, or urine, and any testimony or evidence regarding field sobriety tests."
 {¶ 4} Judge Spurgeon, after the evidentiary hearing on Appellant's motion, ruled:
 {¶ 5} `Officer Tharp failed to perform the HGN testing strict compliance with the NHSTA standards. He DID, however, perform the HGN test in substantial compliance with the NHSTA standards. Therefore, the HGN test results are admissible.
 {¶ 6} "Officer Weiser performed the Walk and Turn test and the One Leg Stand test. Officer Weiser observed 3 clues of impairment on the Walk and Turn test and that the Defendant was unable to complete the one Leg Stand test. The Court finds that these tests were performed in substantial compliance with the NHSTA standards, therefore the tests are admissible.
 {¶ 7} "The Court finds that the Officers had reasonable cause to stop the Defendant and probable cause to arrest the Defendant for the offense of operating a motor vehicle while under the influence of alcohol."
 {¶ 8} As to Appellant's request to take a blood test as opposed to a breath test, the court determined:
 {¶ 9} "The Court, sua sponte, finds that any testimony or other evidence, or inference concerning the Defendant's request for a blood test instead of a breath test will tend to confuse the jury. Accordingly, all testimony, evidence and inferences that the Defendant requested the Officer allow him to take a blood test instead of a breath test is suppressed."
 {¶ 10} Appellant now appeals, raising four Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 11} "I. The trial court erred by failing to suppress all the field sobriety tests since the state failed to meet its burden of proof establishing that the tests were administered in substantial compliance with the nhtsa.
 {¶ 12} "II. The trial court erred by failing to suppress all evidence obtained by the police when the manifest weight of evidence showed there was a lack of probable cause to arrest the appellant for operating a vehicle under the influence of alcohol.
 {¶ 13} "III. The trial court erred in failing to suppress or issue an order in limine, preventing the prosecution from introducing evidence of defendant's `refusal' to submit to breath testing. the trial court further erred in granting its own sua sponte motion to suppress evidence both relevant and favorable to defendant.
 {¶ 14} "IV. The trial [sic] erred in permitting admission of field sobriety tests deemed to have been performed in `substantial' rather than `strict' compliance with generally accepted testing standards."
 I, II, III {¶ 15} The first three Assignments of Error each deal with the rejection of a suppression motion, while the second also includes the issue of manifest weight of the evidence. These three Assignments shall be considered together.
 {¶ 16} There are three methods of challenging on appeal a trial court=s ruling on a motion to suppress. First, an appellant may challenge the trial court=s findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486,State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams
(1993), 86 Ohio App.3d 37. Finally, assuming the trial court=s findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court=s conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96,State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592.
 {¶ 17} The standard of review for manifest weight and sufficiency of the evidence challenges is set forth in State v. Jenks (1981),61 Ohio St.3d 259, syllabus two:
 {¶ 18} "An appellate court=s function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant=s guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 19} The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, syllabus. Further, it is not the function of an appellate court to substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 20} The First Assignment of Error asserts error as to the failure by the State to establish that the field sobriety tests were conducted substantially in accordance with the NHTSA standards.
 {¶ 21} State v. Homan (2000), 89 Ohio St.3d 421, necessitated strict compliance with such standards as to field sobriety tests.
 {¶ 22} Subsequently, R.C. 4511.19 (D)(4)(b) was amended to provide in part:
 {¶ 23} "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:"
 {¶ 24} The First Assignment asserts the failure of the State to establish substantial compliance with testing standards.
 {¶ 25} As to the First Assignment of Error, Appellant argues lack of substantial compliance with NHTSA standards and explains extensively the holdings of the Ohio Supreme Court in State v. Homan (2000),89 Ohio St.3d 421 and State v. Schmitt (2004), 101 Ohio St.3d 79. Of course, the holding of Homan was changed from strict compliance to substantial compliance by the amendment of R.C. 4511.19 and as a result, the court in Schmitt recognized that its decision would have limited applicability.
 {¶ 26} Essentialy, Appellant is arguing that "substantial" compliance is almost "strict" compliance and that the officers are required to inquire as to medications, seizures, brain tumors, brain damage, inner ear disease and drug consumption.
 {¶ 27} This type of questioning is not required even though medications or medical conditions can affect the test. Appellant is absolving himself of providing this information to this officer.
 {¶ 28} We find nothing in the record of the suppression hearing to indicate error by the court as to substantial compliance with the NHTSA requirements.
 {¶ 29} Before the court was a lack of smooth pursuit during the HGN test (Tr. 8). Appellant was asked if he had medical problems preventing testing. (Tr. 10). He did state that he had a few toes missing but couldn't remember which foot had the absence. (Tr. 21). He did not indicate the lack of toes prevented taking the tests. He was given the opportunity to stand on either foot. (Tr. 34).
 {¶ 30} The testimony further indicated that Appellant did not walk heel to toe, that his arms were extended and that he swayed. (Tr. 10).
 {¶ 31} He could not do the one-leg stand. (Tr. 11).
 {¶ 32} He used his hands for balance. (Tr. 34).
 {¶ 33} We reject the First Assignment of Error.
 {¶ 34} The Second Assignment asserts lack of probable cause for the arrest.
 {¶ 35} In order to respond, we must first examine the reasons for the stop of Appellant's vehicle.
 {¶ 36} State of Ohio v. Nicholas K. Ryan, Jan. 28, 2005, Ohio App. 5 Dist., 2005-Ohio-555 states:
 {¶ 37} "Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity. State v. Gedeon (1992), 81 Ohio App.3d 617, 618,611 N.E.2d 972. Reasonable suspicion constitutes something less than probable cause. State v. Carlson (1995), 102 Ohio App.3d 585, 590,657 N.E.2d 591. "[I]f the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, * * * the officer is justified in making an investigative stop." Id. at 593,657 N.E.2d 591. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. When addressing the question of reasonable suspicion to make a traffic stop, this Court reviews the trial court's determinations de novo. Ornelas v.United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 38} As stated, the ordinance upon which Officer Weiser relied in making the traffic stop is the same as R.C. 4511.19(A) and provides that no person shall operate any vehicle if the person is under the influence of alcohol.
 {¶ 39} The testimony was that Appellant was observed at 2:41 a.m. driving without lights and going left of center. (Tr. 22-23). He had bloodshot and glazed eyes, an odor of alcohol, staggered and spoke with slurred speech. (Tr. 11, 32.)
 {¶ 40} We find that a reasonable conclusion warranted the stopping of the vehicle and the arrest subsequent to the field tests.
 {¶ 41} The record is sufficient to deny the Second Assignment of Error. {¶ 42} The Third Assignment concerns several errors alleged in the same Assignment.
 {¶ 43} Testimony indicated that Appellant refused the breath test and expressed the desire to take a blood test. (Tr. 13). It was explained to him that he could have a blood test performed at his own expense but that only the breath test was being offered by the Officer. (Tr. 13).
 {¶ 44} This comports with R.C. 4511.19 which states:
 {¶ 45} "The person tested may have a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist of the person's own choosing administer a chemical test or tests, at the person's expense, in addition to any administered at the request of a law enforcement officer. The form to be read to the person to be tested, as required under section 4511.192 of the Revised Code, shall state that the person may have an independent test performed at the person's expense. The failure or inability to obtain an additional chemical test by a person shall not preclude the admission of evidence relating to the chemical test or tests taken at the request of a law enforcement officer."
 {¶ 46} Appellant had no right to a choice of the type of chemical test available. R.C. 4511.19, supra. He could refuse to take the breathalyzer test and face possible suspension of his license or take such test and have his blood also tested subsequently at his expense. City of Maumeev. Anistik (1994), 69 Ohio St.3d 338, states in part:
 {¶ 47} "General Assembly has authority to establish conditions upon which licenses to operate motor vehicles are issued in state, and General Assembly can establish procedures and regulations suspending or revoking the statutorily granted privilege when interest of public safety or welfare is at stake."
 {¶ 48} In the case sub judice, the refusal was clearly not conditional but apparently based solely upon Appellant's mistaken belief as to the right of test selection. As a result, the Court was clearly correct in overruling the motions in limine and suppression. The refusal therefore would have been admissible had this case been tried. City of Westervillev. Cunningham (1968), 15 Ohio St.2d 121. The admissibility of the blood test, had it been taken, was not before the court but only the refusal to take the test being offered.
 {¶ 49} There is no Constitutional right to refuse to take a reasonably reliable test for intoxication. Schmerber v. State of California,384 U.S. 757.
 {¶ 50} We therefore find that the Third Assignment of Error is not well taken.
 IV {¶ 51} The Fourth Assignment asserts that strict compliance with the NHTSA testing procedures are still required under State v. Homan as the Legislature, by Amendment to R.C. 4511.19, violated the Constitutional rule making authority of the Supreme Court.
 {¶ 52} We reject this contention.
 {¶ 53} Article IV, Section 5 of the Ohio Constitution states:
 {¶ 54} "(A)(1) In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the Supreme Court.
 {¶ 55} "(2) The Supreme Court shall appoint an administrative director who shall assist the chief justice and who shall serve at the pleasure of the court. The compensation and duties of the administrative director shall be determined by the court.
 {¶ 56} "(3) The chief justice or acting chief justice, as necessity arises, shall assign any judge of a court of common pleas or a division thereof temporarily to sit or hold court on any other court of common pleas or division thereof or any court of appeals or shall assign any judge of a court of appeals temporarily to sit or hold court on any other court of appeals or any court of common pleas or division thereof and upon such assignment said judge shall serve in such assigned capacity until the termination of the assignment. Rules may be adopted to provide for the temporary assignment of judges to sit and hold court in any court established by law.
 {¶ 57} "(B) The Supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the General Assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the General Assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.
 {¶ 58} "Courts may adopt additional rules concerning local practice in their respective courts which are not inconsistent with the rules promulgated by the supreme court. The supreme court may make rules to require uniform record keeping for all courts of the state, and shall make rules governing the admission to the practice of law and discipline of persons so admitted.
 {¶ 59} "(C) The chief justice of the Supreme Court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law.
 {¶ 60} Evidence Rules 101(A) and (C) 1 and 104(A) and (B) provide:
 {¶ 61} "(A) Applicability These rules govern proceedings in the courts of this state, subject to the exceptions stated in division (C) of this rule.
 {¶ 62} * * * *
 {¶ 63} "(C) Exceptions These rules (other than with respect to privileges) do not apply in the following situations:
 {¶ 64} "(1) Admissibility determinations. Determinations prerequisite to rulings on the admissibility of evidence when the issue is to be determined by the court under Evid. R. 104."
 {¶ 65} Evid. R. 104 (A) and (B) states:
{¶ 66} "(A) Questions of admissibility generally Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (B). In making its determination it is not bound by the rules of evidence except those with respect to privileges.
 {¶ 67} "(B) Relevancy conditioned on fact When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."
 {¶ 68} In a well-reasoned opinion, the court in State v. Nutter held:
 {¶ 69} "First, the express terms of Evid.R. 101(C)(1) specifically provide that the Rules of Evidence do not apply to determinations prerequisite to rulings on the admissibility of evidence when the issue is to be determined by the court under Evid.R. 104. Evid.R. 104(A) provides that preliminary questions concerning the admissibility of evidence shall be determined by the court, and in making its determination, it is not bound by the Rules of Evidence except those with respect to privileges. Thus, by its own terms, the Ohio Rules of Evidence are not applicable in suppression hearings. State v. Woodring (1989), 63 Ohio App.3d 79,577 N.E.2d 1157. Since the Rules of Evidence do not apply in suppression hearings in the first place, R.C. 4511.19(D)(4)(b) cannot be in conflict with any Evidence Rule in a motion to suppress context.
 {¶ 70} "In considering this issue, the court has reviewed State v.Bresson (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330. In Bresson, the Supreme Court was confronted with two conflicting lines of case law that had developed around Ohio, as well as other states, as to the issue of whether expert testimony was required for horizontal gaze nystagmus test results to be admitted. One line of case authority held that the horizontal gaze nystagmus test is a scientific test that requires expert testimony regarding the test's scientific reliability and acceptance. The other line of authority held that evidence of a horizontal gaze nystagmus test is admissible so long as a proper foundation is laid as to the techniques used and the officer's ability to use it. The Supreme Court inBresson found that horizontal gaze nystagmus test results are admissible so long as the proper foundation has been shown both as to the officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test.
 {¶ 71} "In making this determination, the court in Bresson stated: `The HGN test cannot be compared to other scientific tests, such as a polygraph examination, since no special equipment is required in its administration. Thus the only requirement prior to admission is the officer's knowledge of the test, his training, and his ability to interpret his observations. The admission of the results of the HGN test is no different from any other field sobriety test, such as finger-to-nose, walk-and-turn, or one-leg stand.' State v. Bresson,
supra, 51 Ohio St.3d at 129, 554 N.E.2d 1330.'
 {¶ 72} "In Bresson, the Ohio Supreme Court clearly rejected the line of case authority requiring expert testimony for HGN test results to be admitted. As no expert testimony is required for the admission of field sobriety tests, Evid.R. 702 does not have any application on this issue.
 {¶ 73} "State v. Homan did not create a requirement for expert testimony for the admission of field sobriety tests. The Homan decision did, however, create a standard for the admission of field sobriety tests, that being a standard of strict compliance with the requirements of the NHTSA Manual."
 {¶ 74} Appellant's fourth assignment of error is overruled.
 {¶ 75} This cause is affirmed at Appellant's costs.
Boggins, P.J. Gwin, J. concurs separately and dissents Edwards, J. concurs separately