The STATE of Ohio, Appellant,

v.

HALL, Appellee.

[Cite as State v. Hall, 163 Ohio App.3d 90, 2005-Ohio-4271.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 2004–CA–115.

Decided Aug. 17, 2005.

Jonathan C. Diernabch, Assistant Law Director, for appellant.

Richard Piatt, for appellee.

Diane Richards Brey, State Deputy Solicitor, for amicus curiae Ohio Attorney General.

GWIN, Presiding Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from the Licking County Municipal Court's granting of defendant-appellee's, Delbert Hall's, motion to suppress. The following facts give rise to this appeal.

{¶ 2} In the early morning of April 16, 2004, Officer Mark Emde of the Heath Police Department was on patrol in the city of Heath. Shortly before midnight, he observed a vehicle driving erratically on State Route 79. The officer saw the vehicle weave within its lane several times and cross the berm and the centerline a few times. As the vehicle approached the intersection of State Route 79 and 30th Street, Officer Emde saw the vehicle abruptly swerve left, pass the vehicle in front of it, and proceed through the light. According to Officer Emde, the

driver of the vehicle did not activate his turn signal when he made this lane change. As a result, Officer Emde ordered the car to stop. Officer Emde exited his cruiser, approached the vehicle, and asked the appellee for his license, registration, and proof of insurance. When he did so, he immediately noticed a strong odor of alcohol coming from the car. When Officer Emde asked the appellee whether he had been drinking, appellee denied that he had. The officer also noticed that the appellee avoided making eye contact with him during this exchange.

{¶ 3} Based on these observations, the officer asked the appellee to exit the vehicle so he could administer standardized field sobriety tests. When appellee got out of the car, he appeared unsteady on his feet and used the driver's side door to steady himself. The officer also noticed that the appellee seemed to be shuffling his feet and not to be walking in a normal fashion. In addition, when Officer Emde administered the horizontal gaze nystagmus ("HGN") test, he noticed that the appellee's eyes were red and glassy.

{¶ 4} On June 18, 2004, appellee filed a motion to suppress. On July 6, 2004, appellant filed its objection and response to appellee's motion to suppress. On July 9, 2004, appellant filed an amended objection and response to appellee's motion to suppress. A suppression hearing was held on August 24, 2004. On September 22, 2004, the court issued a judgment entry granting the appellee's motion in part, stating: "The court finds S[enate] B[ill] 163 to be a conflict with the Supreme Court's interpretation of Evidence Rule 702 as set forth in the *Homan* case and it is therefore unconstitutional pursuant to Article IV, Section 5(B) of the Ohio Constitution." On December 9, 2004, the trial court issued a supplemental decision clarifying the court's earlier ruling on the admissibility of the field sobriety tests. In its December 9, 2004 supplemental decision, the trial court held that Officer Emde failed to "strictly comply with the standardized procedures for the administration of the One–Leg Stand, the Walk–and–Turn, and the Horizontal Gaze Nystagmus test." Specifically the trial court noted that the officer failed to give proper instructions to the appellee prior to the performance of the standardized field sobriety tests. As to the HGN test, the court found that the officer could not recall whether he had asked the appellee to remove his glasses prior to conducting the test and further that the officer did not give the appellee proper instructions on how to perform the test. The trial court further found that the officer did not take field notes as required by the National Highway Traffic and Safety Administration manual. Accordingly, the trial court granted the appellee's motion and suppressed the results of the field sobriety tests.

{¶ 5} Following the trial court's ruling on appellee's motion, appellant timely appealed, raising the following assignment of error for our consideration:

{¶ 6} "I. The trial court erred when it declared Ohio Revised Code 4511.19(D)(4)(b) amended and enacted on April 9, 2003 to be unconstitutional as a matter of law."

I

{¶ 7} The issue in the case at bar is whether the mandate of strict compliance laid down by the Supreme Court in *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, renders the legislative provision demanding only substantial compliance unconstitutional under Section 5(B), Article IV of the Constitution of Ohio and Evid.R. 702.

{¶ 8} This court recently addressed this precise issue. In *State v. Robinson* (2005), 160 Ohio App.3d 802, 2005-Ohio-2280, 828 N.E.2d 1050, at ¶ 29, 37–44, we noted:

{¶ 9} "A trial judge or jury is not suited, absent expert testimony, to determine whether a given deviation from the testing protocol found in the NHTSA [National Highway Traffic Safety Administration] manual renders the results of the HGN test unreliable. The possibility arises that the state may try to have the trooper qualified as an expert to testify that his method did not skew the results even though he did not follow the procedure. This possibility creates a problem because the officer does not have a background in statistical analysis, nor the methodology utilized by NHTSA in determining the reliability of the HGN, nor the effect of any deviation from standard protocol.

{¶ 10} " * * *

{¶ 11} "The decisions in [*State v.*] *Schmitt* [ (2004), 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446] and *Homan* make clear that absent strict compliance in the realm of any FST [field sobriety test], a test such as the HGN, which is not a psychomotor test within the observations a layperson would make in assessing an individual's sobriety and is not within a juror's common understanding, will not satisfy the threshold reliability standard for the admission of expert testimony pursuant to Evid. R. 702. * * *

{¶ 12} "It is unlikely that the average juror has any conception or understanding of what 'nystagmus' means. It is a scientific term probably not familiar to most persons. The relationship of nystagmus to the consumption of alcohol or drugs is a scientific principle. The manifestation of nystagmus under different circumstances is also a scientific theory that would not be known by the average person. HGN testing is based on a scientific principle not generally known by lay jurors. *State v. DeLong,* 5th Dist. No. 02CA35, 2002-Ohio-5289, 2002 WL 31185809 at ¶ 59–60.

{¶ 13} "The Ohio Supreme Court has determined that if the test is done in strict compliance with the protocol for the administration of the test, then the state does not have to bring in an expert to testify concerning the underlying principles and scientific validity of the test. However, if strict compliance is not shown in a particular case, then the state does not get the benefit of this 'presumption' of reliability. A jury may be inappropriately influenced by the apparent scientific precision of HGN testing or otherwise fail to properly understand it. *State v. DeLong,* supra. Accordingly, the Ohio Supreme Court has determined that in order to achieve admission under Evid. R. 702, the test must meet the strict compliance standard set forth in *Homan* and [*State v.*] *Bresson* [ (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330].

{¶ 14} " * * *

{¶ 15} "Absent strict compliance with the testing protocol, the HGN test would not be admissible under the Rules of Evidence. Accordingly, R.C. 4511.19(D) would mandate the exclusion by the trial court.

{¶ 16} "However, a defendant's performance of nonscientific standardized field sobriety tests would be admissible even absent proof of 'strict compliance' pursuant to R.C. 4511.19(D). The most recent pronouncement from the Ohio Supreme Court characterizes the walk-and-turn, one-leg stand, and other psychomotor coordination tests as "nonscientific field sobriety tests." *Schmitt,* supra, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, at ¶ 12. Accordingly, admissibility of these tests is not dependent upon fulfillment of Evid. R. 702's requirements for scientific evidence.

{¶ 17} "The finder of fact is less likely to be inappropriately influenced by a psychomotor test within the observations a layperson would make in assessing an individual's sobriety. This type of test is within a juror's common understanding. *State v. DeLong,* supra.

{¶ 18} "We conclude, then, that for all practical purposes, under existing statutes, R.C. 4511.19(D) is viable only so far as it complements Evid.R. 702 and the Ohio Supreme Court's decisions interpreting the admission of scientific, nonpsychomotor field sobriety tests."

{¶ 19} To argue that the Rules of Evidence do not apply to a suppression hearing misses the point. See *State v. Nutter,* 128 Ohio Misc.2d 24, 2004-Ohio-3143, 811 N.E.2d 185; *Mt. Vernon v. Seng,* 5th Dist. No. 04CA000012, 2005-Ohio-2915, 2005 WL 1384628. The Rules of Evidence clearly will apply *at trial.* If an officer testifies during a hearing on a defendant's motion to suppress that he did not conduct the FSTs under the appropriate standard,then it logically follows that the noncompliant tests cannot be admitted at any subsequent trial. Accordingly, suppression of the test results for failure to perform the tests using the appropriate protocol is appropriate because the noncompliant tests would not be

admissible at trial. The question of admissibility at trial is separate and distinct from the question whether the officer had probable cause to arrest a defendant based upon the noncompliant FSTs.

{¶ 20} As a result, as to nonscientific psychomotor field sobriety tests, the state in this case need only have shown that Officer Emde performed them in substantial compliance with the applicable standards described in R.C. 4511.19(D)(4)(b). *State v. Robinson* (2005), 160 Ohio App.3d 802, 2005-Ohio-2280, 828 N.E.2d 1050; *State v. Nicholson,* Warren App. No. CA2003–10–106, 2004-Ohio-6666, 2004 WL 2849229. The HGN was not conducted in strict compliance with the testing protocol. Accordingly, based upon the above analysis, the results of the HGN test are not admissible at trial, and Officer Emde may not testify regarding appellant's performance on the HGN test.

{¶ 21} We reverse the trial court's decision insofar as it finds R.C. 4511.19(D) unconstitutional in its entirety. We conclude then that for all practical purposes, under existing statutes, R.C. 4511.19(D) is viable only insofar as it complements Evid.R. 702 and the Ohio Supreme Court's decisions interpreting the admission of scientific, nonpsychomotor field sobriety tests.

{¶ 22} We reverse the trial court's decision to suppress the nonscientific, psychomotor field sobriety test results. These test results will be admissible if the trial court finds that the officer performed those tests in substantial compliance with the applicable standards described in R.C. 4511.19(D)(4)(b). The amended statute does not attempt to define "substantial compliance." Thus, it will remain the province of the courts to determine whether the standard was met on a case-by-case basis. Additionally, the court must still find that the proffered evidence meets the standard for admissibility contained in Evid.R. 401 and Evid.R. 403 prior to admitting the evidence at trial. The amended statute does not preclude an attack at trial on the specific testing procedure used by an officer.

{¶ 23} We sustain the trial court's decision insofar as it suppressed testimony concerning the HGN test because the trial court has found that the officer failed to conduct the test in strict compliance with the testing protocol.

{¶ 24} The judgment of the Licking County Municipal Court is affirmed in part and reversed in part. This cause is remanded to that court for further proceedings according to law.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

HOFFMAN, J., concurs.
EDWARDS, J., concurs in part and dissents in part.

EDWARDS, J., concurring in part and dissenting in part.

{¶ 25} I concur with the decision of the majority to reverse and remand this matter to the trial court for purposes of determining whether the nonscientific, psychomotor field sobriety tests were performed in substantial compliance with the applicable standards. I agree with the majority that if these tests were performed in substantial compliance with the standards, then the results are admissible at trial and that R.C. 4511.19(D) is constitutional as to nonscientific, psychomotor field sobriety tests.

{¶ 26} I dissent from the conclusion of the majority that R.C. 4511.19(D) is unconstitutional in regard to the admissibility of the results of an HGN test performed in substantial compliance with NHTSA standards. Instead, I would hold that R.C. 4511.19, which provides for admission of field sobriety tests that are administered in substantial compliance with NHTSA testing procedures, is constitutional for the reasons set forth in my concurring opinion in *Mount Vernon v. Seng*, 5th Dist. No. 04CA000012, 2005-Ohio-2915, 2005 WL 1384628.

{¶ 27} However, I do limit my conclusion regarding the constitutionality of R.C. 4511.19 to the constitutional issue that has been raised in the case sub judice. That issue is whether R.C. 4511.19 conflicts with Evid.R. 702 as applied in *Homan*. I do not draw any conclusion at this time as to whether R.C. 4511.19 denies due process of law when it allows for the admissibility of field sobriety test results when those tests are done in substantial compliance with NHTSA standards. Such a denial of due process would exist if scientific data does not support R.C. 4511.19.