{¶ 55} I must respectfully dissent. In State v. Homan, the Supreme Court of Ohio clearly articulated the gravity of courts admitting so-called scientific evidence that does not meet evidentiary standards.[4] As stated by the court:
 {¶ 56} "When field sobriety testing is conducted in a manner that departs from established methods and procedures, theresults are inherently unreliable. In an extensive study, the National Highway Traffic Safety Administration * * * (`NHTSA') evaluated field sobriety tests in terms of their utility in determining whether a subject's blood-alcohol concentration is below or above the legal limit. The NHTSA concluded that field sobriety tests are an effective means of detecting legal intoxication `only when: the tests are administered in the prescribed, standardized manner(,) * * * the standardized clues are used to assess the suspect's performance(, and) * * * the standardized criteria are employed to interpret that performance.'[5] According to the NHTSA, `(i)f any one ofthe standardized field sobriety test elements is changed, thevalidity is compromised.'[6] [7]"
 {¶ 57} Recently, the Fifth District Court of Appeals reached a similar conclusion, finding that the admission of evidence of a horizontal gaze nystagmus ("HGN") test clearly must fall within the parameters established by the Rules of Evidence and, by definition, that means the reliability of testing must have a foundation of strict compliance with scientific procedures.[8] As stated by the court:
 {¶ 58} "To be admissible, the evidence under Evid.R. 702(C)(3) must show that `the particular procedure, test, or experiment was conducted in a way that will yield an accurate result.'
 {¶ 59} "The decisions in Schmitt[9] andHoman[10] make clear that absent strict compliance in the realm of any [field sobriety test], a test such as the HGN, which is not a psychomotor test within the observations a layperson would make in assessing an individual's sobriety and is not within a juror's common understanding, will not satisfy the threshold reliability standard for the admission of expert testimony pursuant to Evid.R. 702. Accordingly, the issue of relevancy or admissibility of scientific evidence cannot be usurped by the legislature. The constitutional principle of separation of powers among the branches of government demands this conclusion. It is the function of the judiciary to rule on the admissibility of relevant scientific evidence.[11]
 {¶ 60} "It is unlikely that the average juror has any conception or understanding of what `nystagmus' means. It is a scientific term probably not familiar to most persons. The relationship of nystagmus to the consumption of alcohol or drugs is a scientific principle. The manifestation of nystagmus under different circumstances is also a scientific theory that would not be known by the average person. HGN testing is based on a scientific principle not generally known by lay jurors.[12]
 {¶ 61} "The Ohio Supreme Court has determined that if the test is done in strict compliance with the protocol for the administration of the test, then the state does not have to bring in an expert to testify concerning the underlying principles and scientific validity of the test. However, if strict compliance is not shown in a particular case, then the state does not get the benefit of this `presumption' of reliability. A jury may be inappropriately influenced by the apparent scientific precision of HGN testing or otherwise fail to properly understand it.[13] Accordingly, the Ohio Supreme [Court] has determined that in order to achieve admission under Evid.R. 702, the test must meet the strict compliance standard set forth inHoman and Bresson.[14] [15]"
 {¶ 62} I simply cannot accept the proposition that the Ohio General Assembly has somehow been given the authority to determine the quality of evidence that may be presented in a court of law. That authority rests squarely within the purview of the Supreme Court of Ohio, and they have spoken. The voodoo scientific test known as Horizontal Gaze Nystagmus has questionable reliability when performed in strict compliance with NHTSA standards. It has no value, whatsoever, when conducted to a lesser standard.
[4] State v. Homan (2000), 89 Ohio St.3d 421.
[5] National Highway Traffic Safety Adm., U.S. Dept. of Transp., HS 178 R2/00, DWI Detection and Standardized Field Sobriety Testing, Student Manual (2000), at VIII-3.
[6] Id.
[7] (Emphasis added.) State v. Homan,89 Ohio St.3d at 424-425.
[8] State v. Robinson, 160 Ohio App.3d 802, 2005-Ohio-2280, at ¶ 41.
[9] State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37.
[10] State v. Homan, supra.
[11] See Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, (the Federal Rules of Evidence provide the standard for admitting expert scientific testimony in a federal trial).
[12] State v. DeLong, 5th Dist. No. 02 CA 35, 2002-Ohio-5289, at ¶ 59-60.
[13] Id.
[14] State v. Bresson (1990), 51 Ohio St.3d 123.
[15] State v. Robinson, 2005-Ohio-2280, at ¶ 36-39. See, also, State v. Hall, 163 Ohio App.3d 90, 2005-Ohio-4271.