OPINION
{¶ 1} Defendant-Appellant Raymond N. Bay, Jr. appeals the July 25, 2006, Judgment Entry entered by the Licking County Municipal Court, denying his motion to suppress.
 {¶ 2} Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 3} On May 15, 2006, shortly after 8:00 p.m., Officer Doug Wells was on traffic duty when he received a call from the dispatcher who had received a call in reference to a possible drunk driver in the area of downtown.
 {¶ 4} Officer Wells began to follow the Defendant-Appellant, who was operating a vehicle similar to the description provided by the dispatcher, which was a black or dark colored SUV and was pointed out to the officer by the vehicle immediately behind it. (T. at 6).
 {¶ 5} Officer Wells then observed Defendant-Appellant drive across or against the white straight boxed off lines for individual parking. (T. at 13-18). The parking areas described are in the roadway portions of downtown Newark, which are utilized during business hours.
 {¶ 6} Officer Wells conducted a traffic stop and during his contact with the Defendant-Appellant he smelled a mild to strong odor of alcohol on his breath. (T. at 8).
 {¶ 7} Defendant-Appellant admitted to Officer Wells that he had consumed a couple beers before he left his house. (T. at 8). *Page 3 
 {¶ 8} At this point, Officer Fleming arrived on the scene and was briefed as to the situation by Officer Wells, including his observations and the traffic violations. (T. at 10-11, 23).
 {¶ 9} Officer Wells requested and Defendant-Appellant agreed to perform standardized field sobriety tests given by Officer Fleming. (T. at 9).
 {¶ 10} Based on the foregoing, Defendant-Appellant was arrested and charged with operating a vehicle while under the influence of alcohol, driving under suspension, and a marked lanes violation.
 {¶ 11} Defendant-Appellant thereafter entered a plea of "not guilty" and filed a jury demand and an appeal of the administrative license suspension which was imposed at the time of his arrest.
 {¶ 12} On or about June 15, 2006, Defendant filed a Motion to Suppress all evidence resulting from an illegal stop of his motor vehicle, and the illegal arrest which occurred shortly thereafter.
 {¶ 13} On July 19, 2006, an evidentiary hearing was held on Defendant-Appellant's Motion to Suppress and Appeal of the Administrative License Suspension.
 {¶ 14} At said hearing, on cross-examination, Officer Wells testified as follows:
 {¶ 15} Q: "O.K., now, first of all, did you know who that person was? [referring to the anonymous tipster]
 {¶ 16} A: "No, I did not.
 {¶ 17} Q: "O.K., did you make any attempt thereafter to identify or speak with that person?
 {¶ 18} A: "No, I did not. *Page 4 
 {¶ 19} Q: "O.K., so basically you were observing the defendant and based upon your observations, your own observations, you initiated the traffic stop, correct?
 {¶ 20} A: "Correct.
 {¶ 21} Q: "O.K. You don't have a video camera on your vehicle, do you?
 {¶ 22} A: "No.
 {¶ 23} Q: "O.K. You indicated that the defendant made a turn and went into the area which is normally for parking, correct?
 {¶ 24} A: "That is correct."
 {¶ 25} Q: "O.K. So you saw him when he made a turn?
 {¶ 26} A: "Correct.
 {¶ 27} Q: "Go on to the area with the white lines?
 {¶ 28} A: "Yes.
 {¶ 29} Q: "O.K., and that's the reason you stopped him, correct?
 {¶ 30} A: "No.
 {¶ 31} Q: "Why did you stop him?
 {¶ 32} A: "I didn't stop him until he made his left-hand turn, which would be north onto First Street as he, again, went next to the curb and when he made his left turn, he went into the parking, there are two parking spaces that set against the curb for parking there on First Street right at East Main, which I guess in a sense, went next to the curb, and as he came out onto the roadway, I then activated my lights and stopped him." (T. at 15-16). *Page 5 
 {¶ 33} Officer Fleming testified that when he was unable to administer the Horizontal Gaze Nystagmus Test due to the Defendant's lack of cooperation, he counted it as a failure (T. at 25).
 {¶ 34} Officer Fleming testified as follows:
 {¶ 35} Q: "So if a person doesn't submit to the test as properly instructed, you are required to fail that person?
 {¶ 36} A: "Yes." (T. at 26).
 {¶ 37} On cross-examination, Officer Fleming testified as follows:
 {¶ 38} Q: "O.K., so would you agree with me that you did not administer the tests in strict compliance, but that it's your position you administered them in substantial compliance (with NHTSA standards)?
 {¶ 39} A: "Yes." (T. at 43).
 {¶ 40} With regard to instructions given by Fleming to Defendant-Appellant for purposes of administering the Horizontal Gaze Nystagmus Test, Officer Fleming testified as follows:
 {¶ 41} A: "He listened to them, but he didn't do what I was telling him to do.
 {¶ 42} Q: "But you counted it as a clue as if he couldn't listen, when, in fact, it was your opinion he just wouldn't do it. Isn't that true?
 {¶ 43} A: "He just wouldn't do them.
 {¶ 44} Q: "O.K. and you counted that as a failure of that test?
 {¶ 45} A: "Yes." (T. at 45).
 {¶ 46} Officer Fleming then testified regarding the administration of the "Walk and Turn" test: *Page 6 
 {¶ 47} Q: "O.K., and how was the lighting there at that time?
 {¶ 48} A: "I don't, think there's any lights on that side of the road where we conducted the test. It was across the street from the Advocate Building, which is well lit and the Post Office, which is also well lit, but I don't think there's any lights right there on that sidewalk.
 {¶ 49} Q: "O.K., you felt that because it was dark, you needed to shine the flashlight on your feet so that he could see them, correct?
 {¶ 50} A: "Yes.
 {¶ 51} * * *
 {¶ 52} Q: "O.K, you indicated that you performed this test in substantial compliance with NHTSA, but not in strict compliance, correct?
 {¶ 53} A: "On this one, yes, because I didn't have a line for him to walk on that was a level hard surface.
 {¶ 54} Q: "O.K. So the line wasn't there, correct?
 {¶ 55} A: "Correct." (T. at 45).
 {¶ 56} On July 25, 2006, the trial court entered a Judgment Entry overruling the Motion to Suppress.
 {¶ 57} On September 8, 2006, Defendant-Appellant withdrew his former plea of not guilty and entered a plea of "no contest". Based on such plea, the trial court found Defendant-Appellant guilty on each charge.
 {¶ 58} The trial court sentenced Defendant-Appellant to 180 days in jail on the OVI charge and imposed a $600.00 fine and a three year license suspension. The trial court also sentenced Defendant-Appellant to 60 days in jail and a one year driver's *Page 7 
license suspension on the charge of driving under suspension, in addition to imposing a fine of $25.00 and court costs on the marked lanes violation.
 {¶ 59} Thereafter, the trial court granted a Stay of Execution and on September 28, 2006, Defendant-Appellant filed his Notice of Appeal.
 {¶ 60} Defendant-Appellant now appeals, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 61} "I. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT APPELLANT'S MOTION TO SUPPRESS UPON THE BASIS THAT THERE IS INSUFFICIENT EVIDENCE ON THE RECORD TO SUPPORT A FINDING THAT THE LAW ENFORCEMENT OFFICER HAD A REASONABLE AND ARTICULABLE SUSPICION OR PROBABLE CAUSE TO BELIEVE THAT THE ACCUSED WAS VIOLATING ANY TRAFFIC LAWS. ALL EVIDENCE FLOWING FROM THE TRAFFIC STOP SHOULD HAVE BEEN SUPPRESSED AS A RESULT.
 {¶ 62} "II. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS SINCE THERE IS INSUFFICIENT RELIABLE EVIDENCE ON THE RECORD TO SUPPORT A FINDING THAT THE LAW ENFORCEMENT OFFICER HAD PROBABLE CAUSE TO ARREST THE ACCUSED UPON A CHARGE OF OVI, AS A RESULT, AND FOR THE REASON THAT THE FIELD SOBRIETY TESTS ADMINISTERED TO THE ACCUSED WERE INHERENTLY UNRELIABLE, EVIDENCE CONCERNING THE FIELD SOBRIETY TESTS SHOULD BE SUPPRESSED, AS WELL. AS ALL OTHER EVIDENCE OBTAINED AS THE *Page 8 
RESULT OF THE ILLEGAL ARREST, INCLUDING, BUT NOT LIMITED TO, THE RESULTS OF A CHEMICAL BREATH TEST."
 Motion to Suppress {¶ 63} Initially, we note that there are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, and State v. Guysinger (1993),86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690, 699, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue *Page 9 
raised in his motion to suppress. Thus, in analyzing these Assignments of Error, we must independently determine whether the facts meet the appropriate legal standard.
 I. {¶ 64} In Appellant's first assignments of error, Appellant argues that the trial court erred in overruling his motion to suppress alleging that the officer lacked a reasonable suspicion to justify the initial traffic stop. We disagree.
 {¶ 65} "It is well-settled law in Ohio that reasonable and articulable suspicion is required for a police officer to make a warrantless stop.Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The reasonable and articulable standard is a lesser standard and not synonymous with the probable cause standard needed to place a person under arrest. Delaware v. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391,59 L.Ed.2d 660. As a general matter, determinations of both reasonable suspicion and probable cause should be reviewed de novo on appeal.Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663,134 L.Ed.2d 911.
 {¶ 66} This Court, relying on Dayton v. Erickson (1996),76 Ohio St.3d 3, and our analysis in State v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, unreported, has held that any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle.
 {¶ 67} "The severity of the violation is not the determining factor as to whether probable cause existed for the stop." State v. Weimaster
(Dec. 21, 1999), Richland App. No. 99CA36, unreported. Rather, "* * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *" Id. at 5, citing McCormick at *Page 10 
10, citing Erickson at 11-12. See also, State v. Messick, 5th Dist. No. 06CA090065, 2007-Ohio-1824 at ¶ 13;State v. Rice, 5th Dist No. 2005CA00242, 2006-Ohio-3703
at ¶ 34; State v. Kearns, 5th Dist. No. 01-CA-6, 2001-Ohio-1741; State v. Lambert (Aug. 20, 2001), 5th
Dist. No. 2001 CA 00089.
 {¶ 68} The traffic law for which appellant was stopped and cited is R.C. § 4511.33, which provides:
 {¶ 69} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 70} "(A) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 71} In the case sub judice, the necessary analysis really focuses upon the meaning of "practicable" in reference to maintaining a vehicle within a lane pursuant to R.C. § 4511.33. State v. Hodge (2002),147 Ohio App.3d 550, 557, 2002-Ohio-3053 at ¶ 28, 771 N.E.2d 331, 337. In a well-reasoned analysis, the Seventh District Court of Appeals inHodge, observed "[t]he legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain the legislature did not intend the statute to give motorists theoption of staying within the *Page 11 
lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable". Id. at 558, 2002-Ohio-3053 at ¶ 43, 771 N.E.2d at 338. The Court in Hodge, further recognized: "[w]e do not intend our decision to stand for the proposition that movement within one lane is a per se violation giving rise to reasonable suspicion, nor does inconsequential movement within a lane give law enforcement carte blanche opportunity to make an investigatory stop.
 {¶ 72} In the case at bar, we find, under the totality of the circumstances, the officer had a reasonable and articulable suspicion that Appellant may have violated R.C. § 4511.33; and therefore, he was justified in stopping Appellant's vehicle. As stated supra, Officer Wells' testimony provided reasonable and articulable facts concerning the traffic violation which provided justification to stop Appellant's vehicle. Officer Wells testified that he observed Appellant driving across parking spaces which were clearly marked by white lines. He testified that he witnessed Appellant travel outside of the single lane on the roadway twice by driving against the painted parking space lines.
 {¶ 73} While Appellant may argue that there were reasons for which he should not have been convicted of a violation of R.C. § 4511.33(A), an officer is not required to have proof beyond a reasonable doubt that someone has violated the marked lane statute in order to make a traffic stop. See, State v. Boyd (Oct. 10, 1996), Richland App. *Page 12 
No. 96-CA-3. The officer need only have a reasonable suspicion based upon articulable facts that the driver violated the marked lanes statute. State v. Lambert, supra.
 II. {¶ 74} In his second assignment of error, Appellant assigns error to the trial court in not granting his motion to suppress arguing that there was insufficient probable cause to place Defendant-Appellant under arrest for the offense of OVI, in part, because the standardized field sobriety tests were not done in compliance, either strict or substantial, with standardized procedures.
 {¶ 75} Revised Code § 4511.19, as amended, requires substantial compliance with the standards enunciated by the National Highway Traffic Safety Administration (NHTSA). Such statute was amended to modify the strict requirement compliance of State v. Homan (2000),89 Ohio St.3d 421.
 {¶ 76} This Court in State v. Robinson (2005), 160 Ohio App.3d 802, previously held that strict compliance rather than substantial compliance was required as to the HGN test finding that the HGN test, as opposed to the one-leg stand or walk and turn tests, is of a scientific nature and not within the common understanding of a layperson, i.e., juror. The Supreme Court of Ohio declined a discretionary appeal of said case but accepted a certified conflict from the Ashtabula County Court of Appeals in the case of State v. Boczar, 11th Dist. No. 2004-A-0063,2005-Ohio-6910 with regard to two decisions of this Court: State v.Robinson, 160 Ohio App.3d 802, 2005-Ohio-2280, 828 N.E.2d 1050, andState v. Hall, 163 Ohio App.3d 90, 2005-Ohio-4271, 836 N.E.2d 614.
 {¶ 77} In State v. Boczar, 113 Ohio St.3d 148, 863 N.E.2d 155,2007-Ohio-1251, the Ohio Supreme Court determined that a conflict existed as to the following issue: *Page 13 
"Whether R.C. 4511.19(D)(4)(b), providing that the results of field sobriety tests are admissible if the officer administered the tests in substantial compliance with the testing standards, is constitutional."
 {¶ 78} In Boczar, supra, the Supreme Court held that results of horizontal gaze nystagmus field sobriety test were admissible without expert testimony if such HGN test was performed in substantial compliance with testing standards, thereby abrogating State v.Robinson, 160 Ohio App.3d 802, 828 N.E.2d 1050 and State v. Hall,163 Ohio App.3d 90, 836 N.E.2d 614.
 {¶ 79} We will therefore review the record to determine if the State carried its burden of proof that the field sobriety tests in this case were administered in substantial compliance with the NHTSA by clear and convincing evidence.
 {¶ 80} Officer Fleming testified that Appellant was instructed how to perform the Horizontal Gaze Nystagmus test in strict compliance with his training. (T. at 24, 59).
 {¶ 81} Officer Fleming further testified that pursuant to his training, when the Appellant would not follow his instructions, specifically, failing to follow the tip of his pen with his eyes, he failed the Appellant. (T. at 25-26)
 {¶ 82} The next standardized field sobriety test administered to Appellant was the walk-and-turn test. Officer Fleming demonstrated the test and used his flashlight during his demonstration and the Appellant's performance. (T. at 45). Appellant was asked four or five times to put his right foot in front of his left foot and during the performance of the test he failed to count aloud or touch heel to toe. (T. at 26-27, 49).
 {¶ 83} The one-leg-stand test was also conducted. Appellant could not complete the test or keep his balance after three attempts. (T. at 29, 50). *Page 14 
 {¶ 84} Based on the foregoing, we find that the field sobriety tests were conducted in substantial compliance with the NHTSA and that the trial court's decision to overrule the motion to suppress was supported by clear and convincing evidence.
 {¶ 85} Appellant also argues that R.C. § 4511.194, as amended, is an unconstitutional violation of separation of powers, is in conflict with Evid.R. 403(A) and Evid.R. 702(C).
 {¶ 86} The Supreme Court in Boczar, supra, reviewed such arguments and held that the substantial-compliance standard adopted by amendment to R.C. § 4511.19 does not violate Section 5, Article IV of the Ohio Constitution.
 {¶ 87} Based upon the foregoing, we do not find that the trial court erred in denying Appellant's motion to suppress. Appellant's second assignment of error is overruled.
 {¶ 88} For the foregoing reasons, the judgment of the Licking County Municipal Court, Licking County, Ohio, is affirmed.
Wise, J. Farmer, P. J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Municipal Court, Licking County, Ohio, is affirmed.
 Costs assessed to Appellant. *Page 1